## DOWNING v. STATE.

CRIMINAL LAW — HOMICIDE — INSTRUCTIONS — APPEAL AND ERROR — MALICE.

1. Where, upon an indictment charging murder, the defendant is convicted of murder in the second degree, the judgment will not be reversed for an erroneous instruction as to murder in the first degree, unless such misdirection in some way influenced the jury in arriving at the verdict returned.

2. An error in an instruction as to what is necessary to constitute premeditated malice, an element necessary to the crime of murder in the first degree, but not an essential ingredient of murder in the second degree, will not cause a reversal of a judgment upon a verdict of murder in the

second degree, where it does not appear that such error influenced the verdict.

3. Although an instruction in a prosecution for murder erroneously defined malice as a "willful act done intentionally without just cause or excuse," and such instruction, if standing alone, might require a reversal of the judgment, it does not amount to reversible error where in other instructions the term malice is correctly defined, and it appears that the jury could not have been misled by the unintentional use of the word "willful" instead of "wrongful" in the instruction complained of.

4. It is not only impossible to rehearse in each instruction every principle of law involved, but it would only create confusion and obscurity to attempt it.

5. Where the evidence is not brought into the bill of exceptions, error assigned upon the instructions given can be considered only so far as to determine whether they would be correct under any state of facts that could have been proven under the issue in the case; and in such a case a recital in the bill that the instructions given were applicable to the evidence makes no important addition to the record.

[Decided December 9, 1902.  Rehearing denied October 5, 1903.]
(70 Pac., 833.)

ERROR to the District Court, Carbon County, HON. RICHARD H. SCOTT, Judge of First Judicial District, presiding.

George W. Downing was indicted and tried for murder in the first degree. He was found guilty of murder in the second degree, and prosecuted error. The evidence was not preserved in the bill of exceptions; but it was contended that the instructions were erroneous as applied to any possible state of facts. A motion to dismiss was formerly overruled. (10 Wyo., 373.) The other facts are stated in the opinion.

*T. H. Gibson* and *N. E. Corthell,* for plaintiff in error.

The court erred in instructing the jury that, "The premeditated malice mentioned in the indictment need be only

such deliberation and thought as enables a person to appreciate and understand *at the time the act is committed* the nature and quality of the act and its probable result." (Ross v. State, 8 Wyo., 351.)

The court erred in instructing the jury that, "Malice means a willful act done intentionally without just cause or excuse." The word "willful," when referring to an act forbidden by law, means that the act must be done knowingly and intentionally. (Woodhouse v. R. R. Co., 67 Tex., 419; Com'rs. v. Ely, 54 Mich., 180-1.) "Any unlawful and willful killing of a human being, without malice, is manslaughter." (U. S. v. Meagher, 37 Fed., 880; Nilan v. People (Colo.), 60 Pac., 486.)

Voluntary manslaughter is the unlawful killing of a human being, without malice, upon a sudden heat of passion. (R. S., Sec. 4954.) Such an act is willful and intentional, though neither justifiable nor excusable. Therefore, the court's definition of malice, making every willful and intentional act done, without just cause or excuse, malicious, includes voluntary manslaughter in the category of malicious crimes, and is thus prejudicial error. (Cribbs v. State, 86 Ala., 613; Nye v. People, 35 Mich., 17; Carr v. State, 23 Neb., 749; Johnson v. State, 30 So., 39 (Miss.); State v. Spangler, 40 Ia., 366; Cohn v. State, 27 Tex. App., 709.)

The court erred in instructing the jury "that malice denotes a state of mind from which acts are done regardless of the rights of others." In manslaughter the rights of the deceased, as well as those of the people, are disregarded; the crime rests upon the state of mind of the slayer and the *absence of malice,* consequently the state of mind from which the acts of a manslayer proceed has no tendency to prove or disprove the existence of malice. It will be seen that the aparent tendency of these instructions is to mislead the jury by minimizing the elements of the higher degrees of crime and raising excusable homicides and those of the lower degrees to those of higher degree, through failing to correctly define malice and premeditation.

The court erred in instructing the jury that murder in the second degree is like murder in the first degree, "except that to constitute murder in the second degree there must be no deliberation."

This instruction contradicts the instruction where the jury were charged that "murder in the second degree is where the act is committed *deliberately* and in cold blood." (Thomson on Trials, Sec. 2336; Kerr on Homicide, Sec. 233.)

Deliberation is necessary to both degrees of murder. "The statutes, it has been held, in requiring murder in the first degree to be *deliberate,* do not change the common law in that respect with regard to murder," etc. (1 Wharton Crim. Law., Sec. 3077; Johnson v. State (Miss.), 30 So., 39; Maher v. People, 8 Colo., 210; State v. Gillick, 7 Ia., 311; Kerr on Homicide, Sec. 68.)

Deliberation means an act done in cold blood and not upon a sudden heat of passion, caused by reasonable provocation. (Kerr on Homicide, Sec. 72.) And it is the deliberation with which an act of murder is done that gives it its malicious character. (Davison v. People, 90 Ill., 229; Johnson v. State (Miss.), 30 So., 39.) Then deliberation being necessary to malice, malice necessary to murder, deliberation is necessary to murder.

The court erred in instructing the jury that, "If there be deliberation, a homicide will be murder in the first degree." Unless there be premeditated malice, there can be no murder in the first degree under the statute. (R. S., Sec. 4950.) Premeditation means design formed to commit a crime or do some other act before it is done. (Bouvier Law Dict.; Kerr on Homicide, Sec. 104; Ross v. State, 3 Wyo., 351.) Premeditation is a broader term and implies more than deliberation. (Schlenker v. State, 9 Neb., 300; Johnson v. State, 8 Ia., 525; State v. Neely, 20 Ia., 110.)

The court erred in instructing the jury that, "If the defendant intentionally killed the deceased with a deadly weapon . . . . and such killing was not in lawful self-

defense." This instruction is incorrect, because it is not qualified to the effect, "That if the defendant believed and had reason to believe from the acts of the deceased and the surrounding circumstances as they appeared to him at the time, that the killing was necessary for the defense of his life or to prevent the infliction upon him of great bodily harm, then he was not guilty." (Bird v. U. S., Sup. Ct., Oct. Term, 1901.)

It may be said that if a judge omits something and is not asked to supply the defect, the party who remains silent cannot complain, but such a principle cannot apply here, because, first, the question of self-defense was a necessary element of the charge given and the failure to state the proposition fully was the equivalent of a manifestly incorrect statement. (Cochran, v. State, 28 Tex. App., 422.) Second, because the judge's attention was called to the defect by the prosecution's request to instruct upon the question. (Bird v. U. S., *supra.*) Third, because the judge's attention was called to the defect by the exception taken and by an independent instruction, requested by the defendant, upon the proposition, at the time, and overruled by the court. Fourth, even should the instruction requested by defense be held incorrect in point of law, they were sufficient to direct the mind of the court to the issue and the omission, which is all that was necessary. (Boyd v. State, 28 Tex. App., 137; Cochran v. State, *supra.*)

The duty of the court to instruct upon this point is strengthened by the fact that the bill of exceptions filed in this case and signed by the judge of said court states that the evidence on both sides tended to show that the defendant was running away, and that the deceased was in pursuit of him, at the time of the homicide. "If the court misdirects the jury as to a matter of law involved in the case submitted to them, such error is ground for reversal. Having undertaken to state the law, the judge must do so correctly, even though there has been no request for a correction, or request at all, to charge upon the point in relation to which

the court has committed the misdirection." (Am. & Eng. Ency. of Pl. & Pr., 216.)

The court erred in instructing that, "In order to reduce a voluntary homicide to the grade of manslaughter, it is necessary that there should be such a degree of anger," etc.

The practical effect of this instruction is that when a voluntary homicide is shown, the presumption of innocence gives way and the presumption of murder arises, together with the burden upon the defendant of "reducing" the crime to the grade of manslaughter. (Trumble v. Ter., 3 Wyo., 281.)

The court erred in instructing the jury that, in manslaughter, "the provocation must be such as would completely produce a degree of anger, etc., in a person of *ordinary temper* sufficient to render the mind incapable of cool reflection." Revised Statutes, Section 4954, provides that a homicide is voluntary manslaughter when done unlawfully, without malice, upon a sudden heat of passion, without mention of provocation or person of ordinary temper. The above instruction is taken from 2 Thompson on Trials, Section 2213, which section is taken from Kemp v. State, 13 Tex. App., 561-63, which is taken from the Penal Code of Texas, Arts. 593-95, which makes special provision for the provocation in manslaughter "such as would completely produce a degree of anger, etc., in a person of ordinary temper," etc. (See Wharton Crim. Law, 9th Ed., Sec. 480.)

The court erred in instructing the jury as follows: "Thus when a voluntary homicide takes place under the immediate influence of sudden passion, as explained above, . . . . . . whether said homicide is manslaughter or murder in the second degree, the true test is, was there an adequate cause to produce such passion?"

This instruction makes *adequate cause* the true test between murder and manslaughter, instead of *malice,* and is but another portion of the instruction taken from 2 Thomson on Trials, Section 2213, which was based upon Art. 593, Penal Code of Texas, which makes *adequate cause* the dis-

tinguishing feature between murder and manslaughter. A killing may be committed *without passion* when there is such adequate cause for passion; would *adequate* cause be the true test between murder and manslaughter in such a case? "Malice, however, as is well known, is the distinguishing feature between murder and manslaughter." (Nilan v. People (Colo.), 60 Pac., 486.) "The characteristic which distinguishes manslaughter from murder is the absence of malice." (Cribbs v. State, 86 Ala., 613.)

"Manslaughter is the unlawful killing of another without malice, express or implied." (4 Blackstone, 91.) "Criminal homicide, if committed with malice, express or implied, is murder; if without malice, it is manslaughter." (Kerr on Hom., Sec. 30; State v. Spangler, 40 Ia., 366.)

The court erred in instructing the jury as follows: "Thus when a voluntary homicide takes place under the immediate influence of sudden passion, and no cause exists which will commonly excuse or justify, etc., . . . . whether said homicide is murder in the second degree or manslaughter, the true test is, was there adequate cause to produce such passion? If there was *adequate cause,* the homicide will be murder in the first or murder in the second degree." It will be seen that this instruction states that a homicide committed under the *immediate* influence of sudden passion may be murder in the first or murder in the second degree.

The court erred in instructing the jury that, "The homicide will be murder in the first or murder in the second degree, as the evidence may enable you to determine."

Having failed to correctly instruct the jury upon the law of murder in the first and murder in the second degree, this instruction casts the burden upon the jury of deciding both the law and the facts of this case.

The court erred by stating and assuming that the deceased, Charles Scott, was a lawful deputy in duty bound to arrest the accused without warrant; thereby placing him before the jury in the attitude of a legally constituted officer in the performance of his duty, and at the same time plac-

ing the defendant in the attitude of a law breaker. (John Bad Elk v. U. S., 177 U. S., 529.) Instead of being a legal officer, Scott was an actual law breaker in assuming to exercise such authority, because he was without due authority from the lawfully and properly constituted authority in attempting to exercise the functions of a special deputy. (R. S., Sec. 2654.)

The court erred in admitting in evidence, over the objection of the defendant, a paper purporting to be an appointment of the deceased, Charles Scott, as Deputy Sheriff of Carbon County. (R. S., Sec. 1118.)

The appointment did not show the special acts he was required to do, consequently he was not a legally constituted deputy.

In the construction of statutes the constant endeavor of the court is to ascertain and give effect to the intention of the Legislature; that intention must be gathered from the words used, unless a literal construction would lead to a manifest absurdity. (Floyd v. Harding, 28 Grat., 405; Sutherland Stat. Const., Sec. 247.)

The statute conferring authority upon the sheriff to appoint deputies to do particular acts prescribes the mode of making such appointment, and all other modes are necessarily excluded. *"Expressio unius est exclusio alterius"* applies. (Sutherland Stat. Const., Sec. 326.)

It is a statute conferring *power* upon a certain person to do certain acts, and must be construed strictly. (Baxter v. Yeagley, 8 Kan. App., 657; Reynolds v. Orvis, 7 Cowen, 269; Sutherland Stat. Const., 390, 454.)

The whole object of the statute would be defeated if the appointment were allowed to be made otherwise than as it directs. If one sheriff or deputy is allowed to disregard the provision, all others would have the same power to the complete destruction of the act.

The court erred in instructing the jury that Scott had the right to arrest the defendant without warrant, if the latter was engaged in removing, *without the consent of the*

*sheriff,* goods previously levied on by him, the instruction not being qualified by any statement as to a criminal purpose. Without a criminal purpose or intent, there can be no crime. (Bouvier's Law Dict., "Intention;" Anderson's Law Dict., "Intention;" Gillett on Crim. Law, Sec. 3; Broom's Max., 306.)

The court erred in instructing the jury, that it was not material to find whether or not the supposed offense alleged to have been committed by the accused was a felony or misdemeanor. That if said supposed offense was a misdemeanor, said Charles Scott had no right to make the arrest unless he was present at the time of its commission. (Biglow on Torts, 185-7; *In re* Kellam, 55 Kan., 700; Ross v. Leggett, 61 Mich., 445; People v. Rounds, 67 Mich., 482; People v. Haley, 48 Mich., 495; Webb v. State, 59 N. J. L., 189; Wald v. Walton, 30 Minn., 506; Wright v. Com., 85 Ky., 123; Com. v. Carey, 66 Mass., 246; Com. v. McLaughlin, 66 Mass., 615; Pinkerton v. Verberg, 78 Mich., 573; Krulovitz v. Eastern R. Co., 143 Mass., 228.) That if said supposed offense was a felony, said Scott had no right to make the arrest, unless he had at the time reasonable grounds to believe at the time that the accused was the guilty party. (Biglow on Torts, 185-7; Cunningham v. Baker, 104 Ala., 160; Malcolmson v. State, 56 Mich., 459; People v. Burt, 51 Mich., 199.) Each of these propositions materially affected the right and duty of the officer and the rights of the defendant.

The court erred by permitting the sheriff to state what his undisclosed purpose was at the time he ordered the defendant and Perkins to throw up their hands. The jury should have been allowed to judge of the motive as the defendant was obliged to do from facts and circumstances as they appeared at the trial. (Carr v. State, 23 Neb., 749.)

The court erred in permitting the introduction in evidence of a letter written by one Charles F. Perkins, a witness for the defendant, and supposed to bear upon the credibility of his testimony, by impeaching his statement. It is the duty

of the court to limit such evidence to the special purpose for which it is admitted, and a failure to do so is a prejudicial error. (11 Ency. of Law, 369; Martin v. State, 35 Tex. Crim. Report, 125; Thorn v. State (Tex.), 35 S. W., 981; Marks v. Culmer, 6 Utah, 419; Kollock v. State, 88 Wis., 663; Fossdahl v. State, 89 Wis., 482.)

The whole record is objectionable, because of frequent repetitions of the same propositions, and because the instructions are argumentative and contradictory in a degree calculated to confuse the jury and impress them with an exaggerated and wrong idea of the quality of the defendant's act and an insignificant understanding of the legal elements of homicide in its various degrees.

*J. A. Van Orsdel,* Attorney General, for the State.

Referring to the brief of plaintiff in error filed herein, we find that it is a technical attack upon the instructions of the court. Short extracts are taken from a number of the instructions given at the request of the plaintiff in the trial court, and a reversal is asked upon presumable errors existing in these instructions.

Counsel for plaintiff in error have spent considerable time in their brief discussing the instructions of the court relating to murder in the first degree, and the interpretation placed by the court upon the term "premeditated malice," as used in our statute defining murder in the first degree. As the defendant was convicted of murder in the second degree, any error contained in the instructions relating to murder in the first degree will not be considered by this court. The jury having found the defendant guilty of a lower grade of crime than murder in the first degree, the presumption is that they were not influenced in their finding by any instructions relating to murder in the first degree. (Ross v. State, 8 Wyo., 351; Thompson on Trials, Sec. 2401; Miller v. State, 3 Wyo., 663.)

Counsel discuss at great length the meaning of the term "willful," or "purposely," and attack the instructions of

the court in this particular. The language used by the court in instruction 2, and to which exception is taken in the brief of counsel, is as follows: "Malice means a willful act done intentionally without just cause or excuse." We submit that the court should consider the entire connection in which this language is used, and it will be found that it correctly defines malice. The court says: "Malice means ill-will, hatred, ill-natured willfulness, a willful intention to do an unlawful act, a willful act done intentionally without just cause or excuse; it also denotes a state of mind from which acts are done regardless of the rights of others." In instruction 6 the court draws the distinction between implied and express malice, and says: "Malice within the meaning of the law includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive; that the term malice has in law a two-fold signification; there is what is known as malice in fact or malice in law, or implied malice. In the legal sense, malice signifies a wrongful act intentionally done without justification or legal excuse. Express malice is that deliberate intention unlawfully of taking away the life of a fellow creature, which is manifest by external circumstances capable of proof. Malice may be found when no considerable provocation appears and when all the circumstances of the assault show an abandoned and malignant heart." All the elements necessary to constitute implied malice are embraced in this instruction. (Ross v. State, 8 Wyo., 380.)

The court cannot consider the question of express malice, for express malice can only be found from circumstances surrounding the commission of the homicide. In the absence of the evidence, the court cannot pass upon the subject of express malice. Neither can the court, in the absence of the evidence, pass upon the question of implied malice, for to do so the court would have to presume that the jury found that there was implied malice in this case, and not express malice. The presumption is that the evidence supports the instructions, and the presumption is that if

there was no implied malice there was express malice; and the jury were justified in so finding.

Referring to the third division of counsel's brief, objection is made to that clause in the instruction of the court which reads as follows: "That malice denotes a state of mind from which acts are done regardless of the rights of others." True it is that in manslaughter the rights of the deceased, as well as those of the people, are to be regarded; true it is that the crime rests upon the state of mind of the slayer, and the absence of malice, but how is this court to determine the rights of the parties to this transaction without any evidence before it, and we must take the language of the court in this instruction to mean what it says. Under the language of the court, if the defendant had rights which should be regarded, and in the protection of these rights he killed Scott, then the court clearly instructs the jury that his act was not done regardless of the rights of Scott. So that in this instruction, as in all of the instructions running through this case, this court cannot say that there is error without first having before it the evidence in the case.

Under the fourth division of counsel's brief exception is taken to the instruction as to murder in the second degree. The court, among other things, says: "Except that to constitute murder in the second degree, there must be no deliberation. This is the distinction made between murder in the first degree and murder in the second degree by the statute." True, deliberation is necessary to the commission of both murder in the first degree and murder in the second degree. (Ross v. State, *supra*.)

If any error exists in this instruction, it is cured by the instruction on page 39 of the transcript. It appears on this page that six instructions were given by the court which were not excepted to in the motion for a new trial, and are, therefore, not before this court for consideration on the subject of error, but are before this court for consideration in connection with other instructions given in the case. In instruction A, on page 39, the court clearly instructs that

deliberation is necessary in murder in the second degree, and defines the character of the deliberation. Instruction A, above cited, defines the deliberation necessary in murder in the second degree in full accord with the authorities cited by counsel in their brief. For an example, "Deliberation means an act done in cold blood, and not upon a sudden heat of passion caused by reasonable provocation." (Kerr on Homicide, Sec. 72.)

Counsel should consider the entire instructions together, taken in connection with the evidence in the case. It is possible in almost any set of instructions to pick out a sentence here and there that, if standing alone, would be erroneous, but when taken in connection with all the instructions in the case do not constitute any error. It seems to be the design of counsel for plaintiff in error to pick out short extracts from each instruction and endeavor to show that, by the giving of this particular extract, the court committed error.

Under another division of plaintiff's brief the question of premeditation and deliberation is again discussed. This goes entirely to the distinction between murder in the first degree and murder in the second degree, and is immaterial in the consideration of this case, in view of the fact that the plaintiff in error was not convicted of murder in the first degree.

The subject of self-defense, under no theory of the case, can be considered by this court in the absence of the evidence. The entire question of whether there was self-defense or not in this case depends entirely upon the evidence; it is a question of fact.

There is nothing in instruction 4 that in any way deprives the defendant of the presumption of innocence or creates a presumption of murder. The objections made by counsel for plaintiff in error to instruction 4, that it removes the presumption of innocence from the defendant, is absolutely cured by instructions B and C, on pages 40 and 41 of the transcript, where the court instructs the jury that the

defendant is presumed to be innocent until such presumption is removed by evidence of guilt which satisfies the mind beyond a reasonable doubt, and the burden is upon the prosecution to prove every essential element of the crime charged. The erroneous instructions cited in Trumbull v. Territory, 3 Wyo., 281, has no bearing whatever upon this case.

If the court will examine this instruction, it opens with the statutory definition of the crime of manslaughter, and, taken as a whole, embraces the entire interpretation of that statute. True, the term "adequate cause," which does not exist in our statute, has crept into these instructions from instructions taken from Thompson on Trials, and, as counsel states, is a distinction found in the Texas criminal code. This, however, does not, to my mind, make these instructions erroneous. In several of these instructions the distinction is clearly drawn between murder in the first degree, murder in the second degree and manslaughter, as set forth in our statute, and any error that may exist, if such there is, in following the instructions from Thompson, as based upon the criminal code of Texas, is cured by the other instructions in this case.

After carefully reviewing the instructions in this case, and it is upon the instructons alone that counsel for plaintiff in error rely to establish error, I am convinced that no reversible error exists, especially in the absence of the evidence in the case.

In this case, as in all cases upon appeal, the burden is upon the plaintiff in error to establish error in this court. The presumption exists that the trial court committed no error until that presumption is clearly removed by the plaintiff in error. In this case, in the absence of the evidence, this court must presume that the evidence sustained the verdict, or, in the language of Miller v. State, 3 Wyo., 666, "It is never the right of a party to demand a new trial in any case, civil or criminal, on account of error in the instructions to the jury, where it is clear from the evidence

that the verdict is right, and that a new trial ought to produce the same result, or would, under correct instructions, certainly produce the same results." The presumption that goes with the defendant in error in this case places the evidence in this case in exactly the same positon as above defined.

In every criminal action everything turns upon the evidence, both in the trial court and upon appeal, and until a complete record is before the court and the evidence is there for its inspection, the presumption that goes with the defendant as to the sufficiency of the evidence is not removed.

KNIGHT, JUSTICE.

This case having been before this court at the last term thereof (69 Pac., 264; 10 Wyo., 373) upon a motion to dismiss this appeal, for the reason that the bill of exceptions does not contain the testimony adduced on the trial in said case, or any part thereof, and is, therefore, insufficient upon which to predicate error in this court, and in the ruling upon said motion and the reasons given for denying the same. Much is said that is not necessary to now repeat, and that makes reference to that opinion necessary to obtain the conditions and restrictions under which this case is now considered in apparent violation of the rules of this court, as claimed by defendant in error at that time.

A statement of the facts gathered from those made by counsel and the charge of court which in this instance must be presumed to have been based upon evidence presented, and upon exceptions upon which errors were based would be in substance as follows: Within thirty days prior to the 30th day of August, 1893, Jens Hanson, as Sheriff of Carbon County, Wyoming, had lawfully levied, by virtue of an execution, upon the personal goods, chattels and property of one Charles F. Perkins, judgment debtor, and that after such levy said judgment debtor entered into an agreement with said sheriff to safely keep said goods and chattels subject to the levy of said execution, as the agent

of the said sheriff, for the period of thirty days following, and that before the thirty days had expired the said Jens Hanson, sheriff, was proceeding with the sale of said property under said levy, and that the plaintiff in error, knowing of the levy as aforesaid, in the night time of August 29th and 30th, 1893, was assisting in removing the goods, chattels and property so levied upon without the consent of said sheriff and out of the possession of said sheriff; that while so engaged the plaintiff in error was discovered by said sheriff and the deceased, Charles Scott, who was at the time a deputy sheriff, and that, in the attempt to arrest the plaintiff in error by the sheriff and the deceased as his deputy, plaintiff in error shot and killed the said deputy sheriff, Charles Scott. As the court instructed the jury as to flight, it is reasonable to presume that evidence of that fact would account for the arraignment of the plaintiff in error more than six years later, upon October 16th, 1899, upon the information herein, charging him with murder in the first degree, filed in said court October 18th, 1893, upon which he was tried and convicted of murder in the second degree and sentenced to the penitentiary for the term of twenty-five years.

The claim made in plaintiff in error's brief, which, in view of the authorities cited, we believe entitled him to a review of the instructions given in the court below by said court, is as follows: "The instructions of the court deal at unusual length with the definition and scope of the several divisions of criminal homicide and abound in explanations of the meaning of the terms 'premeditation,' 'malice,' 'passion,' 'willful,' 'provocation,' 'adequate cause,' etc. It becomes of the utmost importance, therefore, that these instructions should be clear, consistent, correct interpretations of the law. We submit that they do not possess these characteristics."

This court in Ross v. State, 8 Wyo., 351, discussed at length a claim made that erroneous instructions as to murder in the first degree would not entitle a defendant to a

new trial when found guilty of murder in the second degree and made use of the following language: "In a case like the present, where the jury did not follow the misdirection, but disregarded it, and returned a verdict for the lower degree, we think that it affirmatively appears that the defendant was not prejudiced. There can be no possible propriety in remanding a case for correct instructions upon a crime of which the defendant has been acquitted, unless the verdict which was returned was in some way affected by the misdirection, and there is no suggestion that it was in this case."

This plaintiff in error having been found guilty of murder in the second degree, only so much of the instructions of court as could not have been based upon evidence that described that offense and might have influenced the jury in arriving at their verdict will be considered upon the claim made that they were erroneous.

Counsel for plaintiff in error in the argument based upon his brief points out eighteen errors in the instructions; of these, Nos. 1, 2 and 3 relate to instruction No. 2. And the first claimed error to this instruction is in reference to premeditated malice, an element necessary to the crime of murder in the first degree, of which the defendant was not found guilty, and which we pass for reasons hereinbefore stated. The second claimed error to this instruction is to the following language therein contained: "Malice means ill-will, hatred, ill-natured willfulness, a willful intention to do an unlawful act, a willful act done intentionally without just cause or excuse. It also denotes a state of mind from which acts are done regardless of the rights of others." The claim is made that in using the above language the court said: "Malice means a willful act done intentionally without just cause or excuse."

There is sufficient merit in the claim as made to cause us to admit that such a definition of malice would be bad in law, if standing alone, and might have affected the verdict as rendered, but an inspection of the other definitions

of malice given by the court leads us to the conclusion that the word "willful" was not intended, but that "wrongful" was in some unaccountable way displaced by it.

Instruction No. 6, given by the court, is in the following language: "The court instructs the jury that malice within the meaning of the law includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive; that the term malice has in law a two-fold significance. There is what is known as malice in fact and malice in law, or implied malice, in the legal sense. Malice signifies a wrongful act intentionally done without justification or legal excuse. Express malice is that deliberate intention unlawfully of taking away the life of a fellow creature which is manifested by external circumstances, capable of proof. Malice may be found when no considerable provocation appears and when all the circumstances of the assault show an abandoned and malignant heart."

And again in instruction No. 7 the court says: "Malice is not confined to ill-will toward an individual, but it is intended to denote an action flowing from any wicked and corrupt motive. A thing done with a wicked mind and attended with such circumstances as plainly indicate a heart regardless of social duty and fully bent on mischief indicates malice within the meaning of the law, hence malice may be found from any deliberate and cool act against another, however sudden, which shows an abandoned and malignant heart."

After having given these definitions of malice, the court, at the request of the plaintiff in error, said to the jury, among other things: "Murder in the second degree is. where the act is committed deliberately and in cold blood, and not suddenly and in the heat of passion or upon provocation. In the case of murder in the second degree, while it is not necessary that the act should have been previously planned or deliberated upon, still it must be a cold blooded and malicious act. If the circumstances do not show it to be such, or if there exists in the minds of the jury any rea-

sonable doubt that such was the character of the killing, there cannot be any verdict of murder in any degree."

The third claimed error is also directed to the same instruction and makes the court say: "Malice denotes a state of mind from which acts are done regardless of the rights of others." And the claim is made that said language has a tendency to mislead the jury by minimizing the elements of the higher degrees of crime, thereby raising excusable homicides, and those of a lower degree to those of higher degree, through failing to correctly define malice and premeditation.

Claimed errors Nos. 4, 5 and 6 are directed to instruction No. 3, and we fail to find merit in either of said claims. Instruction numbered 3, after giving the statutory definition of murder in the second degree, continues: "This degree of murder is like murder in the first degree, except that to constitute murder in the second degree there must be no deliberation. If there be deliberation, it would be murder in the first degree.

"If, therefore, you find from the evidence, beyond a reasonable doubt, that the defendant, George Downing, killed the deceased, Charles Scott, purposely and maliciously, but without premeditation, and you further find that he killed the deceased without such provocation as was apparently sufficient to create in him an irresistible passion, and such killing was not in lawful self-defense, you will find the defendant guilty of murder in the second degree. If the defendant intentionally killed the deceased with a deadly weapon, without such provocation as was apparently sufficient to excite in him an irresistible passion, and such killing was not in lawful self-defense, then such killing, if malicious, is murder, and if such killing was deliberate and premeditated, it was murder in the first degree." The objections to this instruction is answered by the language used by this court in Ross v. State, *supra:* "It is impossible to state in each instruction all the law applicable to the case. . . . . It is not only impossible to rehearse in each

instruction every principle of law involved, but it would only create confusion and obscurity to attempt it."

The other errors assigned cannot be considered, because of the condition of the record, as explained, and authorities cited in the ruling upon the motion to dismiss, *supra.* The recital in the bill of exceptions of the fact that the instructions given were applicable to the evidence makes no important addition to the record. (90 Ind., 424.) We are unable to detect any reversible error by an inspection of the record before us, and the judgment of the District Court is affirmed.                                        *Affirmed.*

POTTER, C. J., and CORN, J., concur.

ON PETITION FOR REHEARING.

KNIGHT, JUSTICE.

Plaintiff in error has filed a petition for rehearing in this cause. No new point is suggested, but a reargument is submitted by brief of the propositions hereinbefore considered and of other propositions urged, but not considered, by reason of the defective conditions of the record, as fully set out. A full examination and consideration of all matters now urged having been had, in the face of the claim urged that this court, by its rules and former decisions, were not bound to review a record so imperfect, we are of the opinion that the rights of plaintiff in error were fully protected and we are confirmed in our opinion as announced. A rehearing is denied.

CORN, C. J., and POTTER, J., concur.