[No. 9423. Department Two. July 13, 1911.]

THE STATE OF WASHINGTON, *Respondent*, v. LESTER T. BLAINE, *Appellant*.[1]

STATUTES—TITLE—SUFFICIENCY. The title "an act relating to crimes and punishments and the rights and custody of persons accused or convicted of crime and repealing certain acts," is broad enough to include § 2290 of Rem. & Bal. Code, providing that it shall be competent to show the former conviction of witnesses either by record, cross-examination or other evidence; since the title and act manifest an intention that it shall take the place of previous enactments and procedure, even though a former statute had been construed to require proof by record.

WITNESSES—CROSS-EXAMINATION—CRIMINAL LAW — PRIVILEGE OF ACCUSED—EVIDENCE OF FORMER CONVICTION. It is not a violation of the constitutional guaranty of a fair trial that the court compelled the accused on cross-examination to testify to a former conviction, under Rem. & Bal. Code, § 2290, providing that it shall be competent in a criminal proceeding to show the former conviction of a witness by cross-examination, where the jury were instructed that evidence of a former conviction could be considered only for the purpose of determining the weight to be given to his testimony.

HOMICIDE — SELF-DEFENSE — INSTRUCTIONS. Where the deceased was shot by the accused just after taking a bottle of whiskey from the accused, upon learning that the accused had given his son whiskey, an instruction as to the law of self-defense in case of a felonious assault is properly qualified by a statement that the rule is different when the attack is not felonious in character, when there is no real or reasonable apprehension of death or great bodily harm.

HOMICIDE — SELF-DEFENSE — APPEAL—HARMLESS ERROR—INSTRUCTIONS. An instruction clearly and correctly stating the defendant's right to take life in the defense of person and also of his property against robbery is not prejudicial from the fact that parts of it were not applicable to the facts of the case.

HOMICIDE — SELF-DEFENSE — ROBBERY — APPLICATION OF STATUTE. Rem. & Bal. Code, § 2416, warranting the repulsion of a robbery by force, even to taking life, is not applicable where the deceased was only guilty of a trespass in taking a whiskey bottle away from the accused after learning that the accused had given his son whiskey, and with no intent to commit a robbery.

[1]Reported in 116 Pac. 660.

Homicide—First Degree Murder—Instructions—Premeditation. It is proper to instruct that premeditation means "thought over beforehand" for any length of time however short, but that no particular space of time need intervene between the intent to kill and the killing.

Criminal Law—Appeal—Harmless Error—Instructions. Upon a charge of murder, an erroneous instruction as to premeditation is harmless where the jury found that there was no premeditation, and convicted defendant of murder in the second degree.

Same. On a trial for murder, it is harmless to instruct as to first and second degree assault, which may not be included in the charge, where the defendant requested the instructions, and where the jury found a verdict of murder in the second degree.

Homicide—Degrees of Offense—Instructions as to Lesser Offenses—Statutes. Under Rem. & Bal. Code, § 2595, if a homicide is neither excusable nor justifiable, it must at least be manslaughter, and the purpose of the code is to do away in homicide with instructions submitting lesser degrees of statutory offenses.

Witnesses—Cross-Examination—Discretion. It is not an abuse of discretion to refuse unlimited repetition in cross-examination, after inquiry of sufficient length to elucidate the fact as far as the witness is able to detail it.

Appeal from a judgment of the superior court for Whitman county, Pickrell, J., entered November 10, 1910, upon a trial and conviction of murder. Affirmed.

*J. T. Brown*, for appellant.
*Paul Pattison* and *F. L. Stotler*, for respondent.

Chadwick, J.—Defendant was charged with murder in the first degree, and convicted of murder in the second degree. The defense was that the killing was justifiable, and the first error assigned is that the court erred in overruling a motion for a directed verdict at the close of the state's case. This assignment will need no discussion other than that which follows. The testimony of the state was ample to carry the case to the jury.

It is next insisted that the court erred in compelling defendant to admit, when on the stand as a witness in his own behalf, that he had been convicted of a crime and had been an inmate of the penitentiary in the state of Kentucky. It is

contended that the defendant was thus deprived of a fair trial, in violation of the guaranty of the state constitution, and further that the act of 1909 (Rem. & Bal. Code, § 2290), is unconstitutional and void.   This contention is based upon the former statute (Rem. & Bal. Code, § 2722), as construed by this court, it being insisted that we had declared a rule of evidence, in that a former conviction of a felony could be shown only by the record of a judgment of a court of competent jurisdiction, and that the title of the criminal code of 1909, Laws 1909, p. 890, "An act relating to crimes and punishments and the rights and custody of persons accused or convicted of crime, and repealing certain acts," is not broad enough to include § 2290, being the section of the criminal code which governed the lower court.   This section is as follows:

"Every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record thereof, or a copy of such record duly authenticated by the legal custodian thereof, or by other competent evidence, or by his cross-examination, upon which he shall answer any proper question relevant to that inquiry, and the party cross-examining him shall not be concluded by his answer thereto."

We think the title is sufficient.   It was the evident intention of the legislature, manifested not only by the title of the act but by the comprehensiveness of the act itself, to which were added general and specific repealing clauses, that the criminal code should stand in the place of all previous enactments as well as the former procedure, whether defined by the statutes or declared by the courts.   As was said in *Marston v. Humes*, 3 Wash. 267, 28 Pac. 520, where the title, "An act relating to pleadings in civil actions, and amending §§ 76, 77 and 109 of the Code of Washington of 1881," was under consideration:

"Again, it would hardly be contended that it is not competent under the provision in question for the legislature to

enact as a single law a code of civil procedure, and that an act entitled 'An act to provide a code of civil procedure' would be invalid, yet under this subject innumerable subheads and subjects can easily be carved out.   Such title is good because the legislature has seen fit to take a comprehensive subject which can properly cover all of such subjects.   If the legislature can thus by a name sufficiently comprehensive embrace all the subjects properly relating to civil procedure, it must follow that by adopting a subject sufficiently general it can embrace in one act all the statute law of the state.   In other words, the legislature may adopt just as comprehensive a title as it sees fit, and if such title when taken by itself relates to a unified subject or object, it is good, however much such unified subject is capable of division."

See, also, *State v. Tieman,* 32 Wash. 294, 73 Pac. 375, 98 Am. St. 854.

In the absence of a statute, most courts have held that a former conviction can be shown only by a written copy of the judgment, and that oral evidence, either independent or by cross-examination of the defendant, will not be received.   But this rule has almost everywhere been altered, either by statute such as the one now complained of, or by the changing viewpoint of the judges.   Lord Chief Justice Ellenborough, in *Rex v. Castell Careinion,* 8 East 77, said:

"It cannot seriously be argued that a record can be proved by the admission of any witness.   He may have mistaken what passed in court, and may have been ordered on his knees for a misdemeanor; this can only be known by the record."

This is criticized by Mr. Wigmore as a refinement of apprehension bordering on the ridiculous.   2 Wigmore, Evidence, § 1270.   Judge Cooley, in *Clemens v. Conrad,* 19 Mich. 170, states the rule to be as follows:

"We think the reasons for requiring record evidence of conviction have very little application to a case where the party convicted is himself upon the stand and is questioned concerning it with a view to sifting his character upon cross-examination.   The danger that he will falsely testify to a conviction which never took place, or that he may be mistaken

about it, is so slight, that it may almost be looked upon as purely imaginary; while the danger that worthless characters will unexpectedly be placed upon the stand, with no opportunity for the opposite party to produce the record evidence of their infamy, is always palpable and imminent."

But aside from the statute, we do not conceive the reception of such evidence, when limited as it was by the court, who said that "such evidence of his conviction in Kentucky can only be considered by you for the purpose of determining the weight to be given to the testimony of the defendant, and for no other purpose, and should not be used or considered by you for any other purpose or in any other manner whatever in arriving at your verdict," is a violation of any constitutional guaranty. Wharton, Criminal Evidence, § 489; 8 Ency. Plead. & Prac., 117.

The evidence tended to show, that defendant had given a son of the deceased liquor out of a bottle which he then had; that this coming to the notice of the deceased, he undertook to, and did, take the bottle away from defendant just before the fatal shot was fired. The defendant testified that the deceased attacked him with the bottle, and that he shot in self-defense, believing himself to be in danger of great bodily harm. The evidence introduced by the state tended to show that deceased did not assault defendant with the bottle, or at all. Accordingly the defendant submitted a further defense grounded on Rem. & Bal. Code, §§ 2406, 2414, 2418. It is contended that, if a person kill another in defense of his person, or one who is in the act of committing a robbery from the person, it is justifiable. It is upon this latter defense defendant believed his motion for an instructed verdict should have been granted. The court instructed the law of self-defense, and unnecessarily, as we believe, went further and said:

"But the rule is different when the attack is not felonious in character, that is, when from the attack there is no real or reasonable apparent danger of death or great bodily harm to

the assailed.   A person assailed has no right to take the life
of his assailant even if he believes his own life in danger when
the assault is without a weapon of any kind and when there
is no reasonable ground for the belief by the person attacked
that his person is in imminent danger of death or great bodily
harm, but that an ordinary battery is all that is intended and
all that he has reasonable ground to fear from the acts of his
assailant, while a person is not bound to retreat and may law-
fully repel a threatened assault and to that end may use
force enough to repel the assailant, yet he has no right to
repel a threatened assault with naked hands by the use of a
deadly weapon in a deadly manner, unless he honestly believes
and has reasonable grounds to believe that he is in imminent
danger of death or great bodily harm.   However, an assault
with the naked fist is sufficient to justify killing in self-defense
if there is at the time a reasonable apparent purpose by the
assailant to inflict death or great bodily harm upon assailed,
and if the latter at the time believes and has reasonable
grounds to believe that he is in imminent danger of death or
great bodily harm at the hands of the assailant, supposing
that the person assailed acts reasonably and as a reasonable
man under the circumstances, as such circumstances at the
time in good faith appear to him."

It is complained, that the instruction is a comment on the
evidence; that it, in effect, tells the jury that deceased was
without a weapon of any kind, whereas defendant had tes-
tified that, after the deceased had taken the bottle from him,
he had assaulted him with it; and that it is contradictory of
the former and admittedly correct instructions of the court.
We are of the opinion that the statement "that the rule is
different when the attack is not felonious in character; that
is, when from the attack there is no real or reasonable ap-
parent danger of death or great bodily harm to the assailed,"
is a proper qualification to be made in submitting the defense
here set up.   The court had defined the term "felonious" as
well as the word "assault," and from these definitions the
jury must have understood that resistance of an assault to
the extent of taking human life would not be justifiable unless
the assault was made with evil or criminal intent, for it is not

every assault or a taking of property from the person that will justify the taking of human life. The instructions complained of were evidently taken from the case of *State v. Churchill*, 52 Wash. 210, 100 Pac. 309, they having passed the objections there made; and while we agree with counsel for defendant that the parts quoted are not applicable to the facts of the case at bar, yet they cannot be held to be prejudicial, for the court very clearly defined the right of defendant as to the extent to which he could defend not only his person, but also his property, against a robbery. Upon this point, the court said:

"You are instructed that if you find from the evidence that the defendant did shoot and mortally wound James O. Silvey in the actual resistance of an attempt on the part of the deceased to take from the possession of the defendant a bottle of whiskey, the property of defendant, by force and violence, then you should find the defendant not guilty;"

thus going, as we believe, beyond the law, at the request of, and in behalf of, defendant. It is not every chance altercation over property, as this affair was, that comes within the intent and design of the statute. Rem. & Bal. Code, § 2416, warrants the repulsion of a robbery by force, even to killing; but the act must bear the ear marks of that crime. We find no such intent on the part of the deceased. His act was a trespass—an impulsive demonstration on the part of a father who had sought to destroy rather than asport that which had been used, as he believed, to debauch his son.

It is also complained that the following instruction:

"Premeditated means thought over beforehand, for any length of time, however short. When a person after deliberation once forms a design to take human life, after ample time and opportunity for deliberate thought, then no matter how soon the felonious killing may follow the formation of the settled purpose, it will be murder in the first degree. Premeditated malice exists when the intention unlawfully to kill is deliberately formed in the mind and the determination thought over and reflected upon before the fatal blow is struck

(no particular space of time, however, need intervene between the formation of the intent to kill and the killing) ;"
is vicious within the rule of *State v. Rutten*, 13 Wash. 203, 43 Pac. 30. But we do not so read the cases. The court did not, as in the *Rutten* case, tell the jury that the thought and act must concur in time, but was careful to say that premeditation means "thought over beforehand," and if they found that there was previous thought, that the execution of the design might follow immediately thereafter. The instruction complained of is the general rule of law, and has been expressly sanctioned by this court in the case of *State v. Bridgham*, 51 Wash. 18, 97 Pac. 1096. But in any event the error, if it could be held to be an error, would not avail defendant, as the verdict of the jury indicates that it found that there was no premeditation. *Ross v. State*, 8 Wyo. 351, 57 Pac. 924; *Downing v. State*, 11 Wyo. 86, 70 Pac. 833, 73 Pac. 758.

The court defined assault in the first degree and assault in the second degree as included crimes, and submitted to the jury verdicts covering these crimes. It is assigned as error that these crimes are not included in the charge of murder in the first degree, and that defendant is therefore entitled to a new trial. This assignment is not well taken; for although the crime of assault in the first degree and assault in the second degree may not, under §§ 140, 141, and 143 of the Laws 1909, p. 930 *et seq.*, so-called criminal code (Rem. & Bal. Code, §§ 2392, 2393, 2395), and under the facts as developed at the trial, be included in the crime charged (*State v. Pepoon*, 62 Wash. 635, 114 Pac. 449), and had the court of its own motion submitted these verdicts, a conviction of either of the offenses, assault in the first or assault in the second degree, would have resulted in an arrest of judgment (*State v. Kruger*, 60 Wash. 542, 111 Pac. 769), the error was harmless, (1) because we find from the record that defendant requested that the crimes of assault be defined, and that such

verdicts be submitted to the jury; and (2) the jury did not find the defendant guilty of either degree of assault, but of the crime of murder in the second degree, thus indicating that it did not find the killing to be justified so as to permit a verdict for anything else than manslaughter. We believe it will not be out of place to say in this opinion that the evident design of the so-called criminal code was to change the former rule and practice of the courts in submitting as crimes included in the charge of homicide all the varying degrees of statutory and common law crimes against the person, down to and including simple assault. It may have been that it was the intention of the framers of that document to compel convictions for the crime charged and proven and to avoid compromise verdicts. At any rate, as the law now is, a homicide other than those specified in Rem. & Bal. Code, §§ 2392 to 2394, not being excusable or justifiable, is manslaughter. Rem. & Bal. Code, § 2395. It is not our province to deal with the policy of these statutes. It is enough that they have been written by the legislature, and the instructions of trial courts in criminal cases cannot be too carefully prepared with reference to the present code.

It is also complained that the court erred in refusing to permit defendant's counsel to further cross-examine a witness for the prosecution. It is said:

"The defense had a right on cross-examination to ask any question which would tend to test the accuracy or veracity of the witness, and cross-examination is as important to test the accuracy of testimony as its truthfulness or credibility, and prejudice will be presumed when this right is denied, and where a man is being tried for his life, certainly the right to determine through the medium of cross-examination the exact knowledge of the witness or the accuracy of his statements, should not be denied him." *State v. Rutten, supra.*

All rules of evidence must be measured by reference to the particular case. When the subject of examination has been fairly inquired into and rehearsed upon cross-examination, to a length sufficient to attain the object sought, and elucidate

the fact so far as the witness is able to detail it, it will not be held to be an abuse of discretion on the part of the trial court to refuse the right of unlimited repetition on the part of counsel or the witness. When stopped by the court, counsel was interrogating the witness upon a subject which had been fully inquired into. In the *Rutten* case inquiry had been denied. In the case at bar, the ruling of the court is sustained by *State v. Coates*, 22 Wash. 601, 61 Pac. 726; *Nunn v. Jordan*, 31 Wash. 506, 72 Pac. 124; *State v. Roller*, 30 Wash. 692, 71 Pac. 718; *Fleischner v. Brewer*, 21 Wash. 6, 56 Pac. 840. Other errors are assigned, but are fully covered by what we have said in this opinion.

Judgment affirmed.

DUNBAR, C. J., ELLIS, MORRIS, and CROW, JJ., concur.