[No. 15830. Department Two. July 16, 1920.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM GOTTSTEIN, *Appellant.*[1]

HOMICIDE (121)—TRIAL—INSTRUCTIONS AS TO LESSER OFFENSE. In a prosecution for murder, an instruction should not be given as to manslaughter, where the evidence excludes the possibility that the killing occurred without design, except that it was done in an attempt to commit robbery which is murder in the first degree.

CRIMINAL LAW (452)—HOMICIDE (401)—APPEAL—HARMLESS ERROR—INSTRUCTIONS INVITED. Error cannot be predicated upon submitting the question of murder in the second degree, where accused requested the submission of second degree murder and manslaughter.

CRIMINAL LAW (135)—EVIDENCE—SELF-SERVING DECLARATIONS. In a prosecution for homicide, defendant's statements to his wife as to his movements are inadmissible as self-serving declarations, where he did not testify and there was no evidence to impeach him.

[1]Reported in 191 Pac. 766.

SAME (102)—EVIDENCE—RES GESTAE—STATEMENTS OF ACCUSED.
In a prosecution for homicide, the defendant's statements to his wife
after returning home on the day the crime was committed, are too
remote in time to be admissible as part of the *res gestae.*

WITNESSES (88)—EXAMINATION—REDIRECT EXAMINATION—SCOPE
AND EXTENT. Where, in a prosecution for homicide, defendant's
cross-examination of a witness developed that witness had written
a name on a slip of paper, which was sealed up and to be opened
only in case witness disappeared, accused cannot complain that
redirect examination disclosed the name of defendant as the person
accused by the witness.

Appeal from a judgment of the superior court for
King county, Hall, J., entered May 3, 1919, upon a
trial and conviction of murder. Affirmed.

*Walter B. Allen,* for appellant.

*Fred C. Brown, Chas. Ethelbert Claypool,* and
*John D. Carmody,* for respondent.

TOLMAN, J.—Appellant was, by information filed in
the superior court for King county, charged with the
crime of murder in the first degree. From a verdict
of guilty of murder in the second degree and a judg-
ment and sentence based thereon, the case is brought
here for review on appeal.

The first assignment of error is that the court erred
in refusing to submit to the jury by proper instruc-
tions the crime of manslaughter. In *State v. Palmer,*
104 Wash. 396, 176 Pac. 547, it is said:

"It would seem from this that the voluntary killing
upon sudden heat, which was formerly included in the
crime of manslaughter, has been taken out of that
classification by the act, and, as the law now stands,
every killing which is accompanied by a design to kill
is either murder in the first degree or murder in the
second degree, depending upon whether that design
was or was not accompanied by premeditation. No
longer is the intentional killing upon sudden heat, or
the intentional killing, no matter how provoked, classi-

fied as manslaughter. And as soon as it appears that the killing was with a design to effect death, the element of manslaughter disappears from the case. That grade of homicide is characterized by the fact that the one guilty of it possessed no design to kill. If the purpose to kill is present, the offense must be murder in one of its degrees."

The law as thus stated is not criticized, but it is argued that it must affirmatively appear from the evidence that the crime of manslaughter is excluded before the court will be justified in refusing to submit that crime to the jury. It has been frequently held that, where the evidence excludes the lesser offense, such lesser offense should not be submitted to the jury. *State v. Kruger*, 60 Wash. 542, 111 Pac. 769, and authorities there cited. The statute, Rem. Code, § 2167, provides that, upon an indictment or information for an offense consisting of different degrees, the jury may find the accused not guilty of the degree charged, and guilty of any inferior degree, and therefore the correct rule is that the lesser crime must be submitted to the jury along with the greater, unless the evidence positively excludes any inference that the lesser crime was committed, and it is not incumbent upon the defendant, before such an instruction will be given, to show facts from which a jury might draw the conclusion that the lesser crime and not the greater was, in fact, committed; still we think the trial court was right in this case in refusing to submit the crime of manslaughter, for, after a careful study of the record, we think the evidence excludes the possibility that the killing occurred without design, except possibly that it was done in an attempt to commit robbery, which is expressly made murder in the first degree by our statute. Considering all of the circumstances shown, the nature of the wound, and the point where the bullet entered at

the left and rear part of the head of deceased, we cannot conceive that the shot was fired in self-defense, and even if so fired, the killing would have been excusable or justifiable and no crime, either of murder or manslaughter, would have been committed, and no instruction as to manslaughter would have been pertinent.

While the trial court, as we view the evidence, would have been justified in submitting to the jury first degree murder only, yet the defendant, having requested instructions on murder in the second degree and manslaughter, cannot now complain because his request was in part granted. If, under the evidence, it was error to submit the question of murder in the second degree, the defendant by his request invited such error. *State v. Blaine*, 64 Wash. 122, 116 Pac. 660.

It is next argued that the trial court erred in excluding certain testimony sought to be drawn from the defendant's wife as to what her husband told her regarding his movements on the day the crime was supposed to have been committed. This evidence, it is urged, is admissible to contradict testimony given by one of the state's witnesses to the effect that the defendant on that day, after returning to Seattle from the scene of the crime, asked him to tell the wife, if she should inquire, certain things regarding his movements which were not true. And, also, it is urged that what the defendant then told the wife was a part of the *res gestae*. The cases cited to sustain this contention seem to lay down the rule that, where an attempt is made to impeach a witness by proving former statements made by him in conflict with his testimony, his credit cannot be sustained by proof that he made, to other persons before being called as a witness, the same statements as detailed in his testimony, but such state-

ments may be admissible, if made before the effect could be foreseen, to show that his testimony is not a fabrication of recent date. *People v. Doyell,* 48 Cal. 85; *Stolp v. Blair,* 68 Ill. 541; *State v. Hendricks,* 32 Kan. 559, 4 Pac. 1050; *Hester v. Commonwealth,* 85 Pa. St. 139; *Ogden v. Peters,* 15 Barb. (N. Y.) 560. This rule does not help the defendant, as he did not offer himself as a witness, did not testify as to his movements or as to any statement he had made concerning them, and the state had no occasion to try to impeach him. The statements sought to be proven by the testimony of the wife were simply self-serving declarations and were too remote in time to be a part of the *res gestae.*

The witness Good, when he first read of the disappearance of the deceased, went to the sheriff's office and said in effect that, if the deceased disappeared on Wednesday, there was nothing in what he had to say, but if he disappeared on Friday, then he knew something which might be of assistance in unraveling the mystery, and further intimated that the knowledge which he possessed might cause those guilty to seek to put him out of the way. He then wrote the defendant's name on a slip of paper, sealed it in an envelope and gave it to the deputy sheriff, to be opened only if he, Good, disappeared or when the body of the missing man might be found, saying that, if he were killed or disappeared, the person named on the slip would be responsible. Nothing regarding the writing of the name or the leaving of the envelope was touched upon in the direct examination of the witness Good, but upon cross-examination all of the facts were brought out except only the name written upon the slip of paper, and on redirect examination the paper bearing the defendant's name was, on the state's offer, introduced in evi-

dence. The defendant argues that this was prejudicial. If so, he cannot complain. He took the chance involved in a searching examination of the state's witness, and having developed the facts of the writing of the name and the depositing of it with the sheriff and all the details surrounding it, he cannot now complain, because, under familiar and well settled rules of law, the state took advantage of what he had developed and placed before the jury that which he had made proper and material.

We have examined with care each one of appellant's numerous assignments of error, have faithfully read the record, and fail to find any prejudicial error committed by the trial court. To discuss in detail, or even to state each assignment so that the point raised can be fully understood, would unduly extend this opinion, and as each point made is easily solvable by well settled rules of law, no good purpose could be served by such statement or discussion. Appellant has twice been found guilty by a jury. The trial, which we have reviewed, was fairly conducted, appellant's rights were ably guarded by competent and eminent counsel, and he must abide the result. The judgment is affirmed.

HOLCOMB, C. J., FULLERTON, MOUNT, and BRIDGES, JJ., concur.