[No. 36092. En Banc. July 26, 1962.]

THE STATE OF WASHINGTON, *Respondent,* v. JESS G. SHIRLEY, JR., *Appellant.*\*

*Max R. Nicolai* and *Philip H. DeTurk,* for appellant.

*Charles O. Carroll* and *Liem E. Tuai,* for respondent.

FOSTER, J.—The sentence of death in this first-degree murder case must be reversed because of an erroneous instruction, which is:

"It is not necessary for an appreciable period of time to elapse for premeditation to exist. . . ."

This was error because it obliterates the distinction between murder in the first and second degrees. The first territorial legislature of 1854 defined murder in the first degree as follows:

"Every person who shall purposely, and of deliberate and premeditated malice, or in the perpetration, or attempt to

*Reported in 373 P. (2d) 777.

perpetrate, any rape, arson, robbery or burglary, or by administering poison, or causing the same to be done, kill another, every such person shall be deemed guilty of murder in the first degree . . . " Laws of 1854, Wash. Terr., § 12, p. 78.

Murder in the second degree was defined as follows:

"Every person who shall purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree . . . " Laws of 1854, Wash. Terr., § 13, p. 78.

 Continuously since, the difference between murder in the first degree and murder in the second degree has been the presence or absence of deliberate and premeditated intent.

The present statutes had their origin in the criminal code of 1909, Laws of 1909, chapter 249, § 140, p. 930 (first-degree murder), and Laws of 1909, chapter 249, § 141, p. 930 (second-degree murder), and are now codified as RCW 9.48.030 and RCW 9.48.040, and, so far as material, are as follows:

"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed either—

"(1) With a premeditated design to effect the death of the person killed, or of another; or . . . " RCW 9.48.030.

"The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—

"(1) Committed with a design to effect the death of the person killed or of another, but without premeditation; or . . . " RCW 9.48.040.[1]

Nearly seventy years ago, in *State v. Rutten,* 13 Wash. 203, 212, 43 Pac. 30 (1895), this court held that it was reversible error to instruct in a trial on the charge of first degree murder that "There need not be any appreciable space of time between the formation of intention to kill and killing." Judge Dunbar stated the court's reasons as follows:

"It seems to us that the language used wipes out the distinction made in the statute between murder in the first

---

[1]They were based upon the New York Criminal Code. *State v. Palmer,* 104 Wash. 396, 176 Pac. 547.

and second degree. While no great amount of time necessarily intervenes between the intention to kill and the act of killing, yet, under our statute there must be time enough to deliberate, and no deliberation can be instantaneous; in fact, the idea of deliberation is the distinguishing idea between murder in the first and second degree, and the instructions of the court which we have quoted give exactly that which would be necessary to define murder in the second degree, because the intention to kill must be in the mind of the slayer, and he must do it purposely and maliciously; consequently the act of killing must be preceded by the purpose to kill, and it must be a malicious purpose, and that purpose may be formed instantaneously, or as expressed by the learned court below, 'as instantaneous as the successive thoughts of the mind,' and under the old definition of murder, viz., the unlawful killing of any subject whatsoever through malice aforethought, that would be a proper instruction in regard to murder; but our statute has changed the law in this respect, and has introduced the element of deliberation, and deliberation means to weigh in the mind, to consider the reasons for and against, and consider maturely, to reflect upon,—and while it may be difficult to determine just how short a time it will require for the mind to deliberate, yet, if any effect is to be given to the statute which makes a difference between murder in the first and second degree, the language used by the learned court is too broad."

That decision has been reaffirmed (*State v. Straub,* 16 Wash. 111, 47 Pac. 227; *State v. Moody,* 18 Wash. 165, 51 Pac. 356; and *State v. Arata,* 56 Wash. 185, 105 Pac. 227; *State v. Ross,* 56 Wn. (2d) 344, 353 P. (2d) 885), but never overruled.

The court, in the instruction now before us, followed the language reported in the temporary publication of our opinion in *State v. Ross,* 156 Wash. Dec. 361, 368 (June 23, 1960), which stated:

"It is not necessary for an appreciable period of time to elapse for premeditation to exist. *State v. Miller,* 164 Wash. 441, 2 P. (2d) 738. . . ."

In the official publication of the opinion (56 Wn. (2d) 344, 351, 353 P. (2d) 885), however, the sentence was corrected to read as follows:

"It is necessary for an appreciable period of time to elapse for premeditation to exist. *State v. Horner,* 21 Wn. (2d) 278, 150 P. (2d) 690. . . ."

In fairness to the conscientious and painstaking trial judge, it must be pointed out that volume 56 of the second series of the Washington Reports was not available when this case was tried.

Thus it is that the trial court made a mistake which eliminated the distinction between first and second degree murder, for which reason the judgment must be reversed and a new trial ordered.

DONWORTH, WEAVER, ROSELLINI, HUNTER, and HAMILTON, JJ., concur.

OTT, J. (dissenting)—The majority grant a new trial because of a technical error in the wording of an instruction relating to the requisite time for premeditation. The defendant did not contend at the trial or on appeal that there was insufficient time for premeditation, but, rather, contended that he was so intoxicated at the time that he could not form an intent to commit murder.

The evidence with reference to premeditation disclosed by defendant's voluntary confession, made shortly after his arrest, is in part as follows:

"For the past three days, my wife Michiko, had been threatening to leave me. Although she had talked of leaving me on prior occasions, she became real serious about it about three days ago. At that time I made up my mind to kill my wife and myself. The reason I didn't kill her and myself three days ago is because both of my guns were in pawnshops."

The confession continued, stating that, on the day of the murder, he redeemed the weapons from the pawnshops and

" . . . After this I loaded the clips for the pistol and rifle with ammunition I had in the apartment. I knew the pistol worked okay but wanted to check the rifle. I turned the radio on real loud. I worked the bolt of my rifle and put a live cartridge into the chamber. I then fired a shot into the floor, under a table near the kitchen door. (The table was in the dining room) I then pulled the slide back

on my .380 pistol, chambered a live round into the barrel and fired a shot through the same hole in the floor that I made with the rifle. I then placed the safety on, on the pistol, and put the pistol in my lefthand shirt pocket. I then had a small drink of wine. I put the rifle in the closet located in the living room and left the apartment. . . .

" . . . A few minutes later my wife, Michiko came home & woke me up. She began telling me she was going to leave me. At this time she was standing in the dining room, behind the dining room table. I told her that neither her nor I were leaving. I got up from the couch & walked over to the closet & got my rifle. The rifle was all loaded and ready to shoot. I walked to the double doorway, pointed the rifle at my wife and pulled the trigger. I knew the bullet hit my wife as she dropped to the floor immediately, without crying out or making a sound. She didn't move after falling to the floor. I mixed and drank a couple of drinks. After this I walked over to my wife & felt her pulse. I was sure that she was dead. I then mixed and drank another drink of Vodka. After this I decided to have the police notified. I had decided by this time not to kill myself."

In addition to this evidence of premeditation, the defendant took the stand and voluntarily testified as to his preparations for killing his wife.

The defendant requested and the court gave instruction No. 3-A as follows:

"You are instructed that the law relative to murder uses the terms 'premeditated design' and 'design'. The first of these terms appears in the definition of first degree murder, while the second appears in the definition of second degree murder. The two terms are not synonymous.

"The word 'premeditate' means to meditate beforehand, to study with a view to subsequent action, to think out beforehand, to plan ahead. 'Premeditated' means previously planned.

"The word 'design' means intent, purpose.

"To be first degree murder, a crime must have been planned ahead, deliberated upon and meditated over. There is no such requirement for second degree murder. However, for both first degree murder and second degree murder, the slayer must have acted with the intent and purpose of causing death."

The majority, in reversing the trial court, state that the first sentence of instruction No. 4 was so prejudicial to the defendant that he was denied a fair trial. Instruction No. 4 is as follows:

"It is not necessary for an appreciable period of time to elapse for premeditation to exist. A single moment may be enough. Premeditation exists if you find from the evidence, beyond a reasonable doubt, that any length of time elapsed, no matter how short, sufficient to allow an intent to be formed and reflected upon prior to being carried into effect, if the thought and act do not occur instantaneously."

The defendant did not except to this instruction.

Assuming, arguendo, that the questioned sentence did not accurately express the law of this state, the defendant was not denied a fair trial thereby. The uncontroverted evidence established that, over a period of ten hours, the defendant premeditated the murder of his wife, and made preparations to do so.

A consideration of these facts establishes that insufficient time to premeditate murder was not an issue, and that, therefore, the defendant was not prejudiced by the questioned sentence in instruction No. 4.

In my opinion, the judgment and sentence should be affirmed.

FINLEY, C. J., and HILL, J., concur with OTT, J.