[Nos. 1218-1; 1219-1.    Division One—Panel 2.    April 16, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. CLYDE WAYNE TIKKA, *Defendant*, MARVIN BONGA, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. CLYDE WAYNE TIKKA, *Appellant*.

*Richard Cole, Cogdill & Deno,* and *James E. Deno,* for appellants (appointed counsel for appeal).

*Robert E. Schillberg, Prosecuting Attorney,* and *David G. Metcalf, Deputy,* for respondent.

CALLOW, J.—The appeals presented, though filed separately, will be consolidated for the purposes of this opinion. The defendants were tried together, and the issues presented for review are similar to a great extent. Clyde Tikka, Marvin Bonga and Mark Costen were all residents of the Washington State Reformatory at Monroe. On July 26, 1970, Mark Costen was stabbed to death during an exercise period at the reformatory. The defendants, Bonga and Tikka, were charged with murder in the first degree.

One witness testified that he had observed the defendant, Tikka, walk up behind the victim, grab him, hold his arms down, and turn him towards an outer wall and that the defendant, Bonga, then stabbed the victim five times whereafter Tikka dropped Costen to the floor where he collapsed. This witness also testified that he later saw Tikka and Bonga sitting together at the other end of the cell block in front of a television set, and he described them as having removed their coats and wiped their hands and Bonga as having a "smirky smile" on his face at that time. This witness testified that he observed the knife Bonga had used

lying against the cell wall, and he identified the knife he saw as the knife found by a correctional officer.

Another inmate testified that at "half-time" during the recreation period on the day of the homicide he had gone to his cell and was locked in according to the reformatory rules. Prior to the lock-in, he had seen Tikka and Bonga walking together in the cell block; and he stated they generally "ran around together." After the stabbing occurred, he had seen a body removed from the recreation area and had also seen the knife lying against the recreation area wall. When the inmates were later released for dinner, he had eaten at a table with Bonga and had asked him if he had done the act and Bonga had replied in the affirmative. Further, this witness testified that after they left the mess hall one of the defendants had a small hole in his pant leg and he said he had cut out a blood spot. Two weeks before the victim was killed, this witness had seen Bonga in possession of the knife in question and had later seen him carrying it on his person.

A third witness said that he had observed an altercation and when he walked closer, saw Bonga with a knife in his hand and Tikka holding the victim. He demonstrated the physical attack, said he saw Tikka let Costen slide to the ground and saw Bonga place the knife under his coat and start toward the television area. He saw Bonga drop the knife on the floor and kick it towards the outer wall.

The verdicts of the jury found both defendants guilty of murder in the first degree. The issues raised concern the admission of allegedly gruesome and inflammatory photographs, a refusal to reduce the charge from first-degree murder to second-degree murder, and the instruction given to the jury defining the element of premeditation as an element of murder in the first degree.

The admission or exclusion of photographs based upon their gruesome nature is within the discretion of the trial court. *State v. Hawkins,* 70 Wn.2d 697, 425 P.2d 390 (1967); *State v. Farley,* 48 Wn.2d 11, 290 P.2d 987 (1955).

*State v. Adams,* 76 Wn.2d 650, 458 P.2d 558 (1969); *rev'd on other grounds,* 403 U.S. 947, 29 L. Ed. 2d 855, 91 S. Ct. 2273 (1971), held that pictures that accurately represent the true state or condition of the things depicted are admissible if they have probative value upon an element of the crime charged. Since the photographs involved had clear probative value, they were admissible to prove relevant and material facts about the scene of the crime and the physical facts of the case. In *State v. Ferrick,* 81 Wn.2d 942, 506 P.2d 860 (1973), the court held that the photographs admitted were relevant to show the violent nature and extent of the stabbing of the victim thus illustrating the manner of death.

Gruesome photographs are admissible unless they are designed primarily to arouse the passions of the jury and prejudice the defendant. The test of admissibility is whether the probative value of the photographs outweighs their probable prejudicial effect. *State v. Adams, supra; State v. Nyland,* 47 Wn.2d 240, 287 P.2d 345 (1955); *State v. Mathers,* 3 Wn. App. 639, 477 P.2d 34 (1970); 5 R. Meisenholder, Wash. Prac. § 32 (1965). An abuse of the trial court's discretion regarding the admissibility of photographs will occur only if the photographs do not have probative value and will so inflame and prejudice the jury that their objective consideration of guilt or innocence is overwhelmed. Such a situation does not arise from the admission of these photographs.

The court gave the following instruction:

> You are further instructed that the term "design to kill" as those words are used in the Information and in these instructions, means purpose or intention to kill.
> "A premeditated design to kill," as the phrase is used in the Information and in these instructions, means and comprehends a design, or plan, or intention to kill, which has been thought over beforehand or deliberated upon before being carried into effect. There need not be in law any fixed or definite length or period of time elapse between the formation of a design to kill and the carrying out or completion of such design.

Premeditation exists if you find from the evidence, beyond a reasonable doubt, that any length of time elapsed, no matter how short, sufficient to allow an intent to be formed and reflected upon prior to being carried into effect, if the thought and act do not occur concurrently, if there is some appreciable length of time between thought and act.

It is claimed that the instruction improperly defined the time period that must transpire for premeditation to have taken place. The question is not primarily one of time but of the possibility of the existence of the intention to cause death when the defendant committed the act. The inquiry is whether there was time to form an intent to cause death within the mind of the defendant prior to the act. The moment must exist for the mental concept to intend death to be the predecessor of the physical act. The following instruction was approved in *State v. Blaine,* 64 Wash. 122, 128, 116 P. 660 (1911), as follows:

"Premeditated means thought over beforehand, for any length of time, however short. When a person after deliberation once forms a design to take human life, after ample time and opportunity for deliberate thought, then no matter how soon the felonious killing may follow the formation of the settled purpose, it will be murder in the first degree. Premeditated malice exists when the intention unlawfully to kill is deliberately formed in the mind and the determination thought over and reflected upon before the fatal blow is struck (no particular space of time, however, need intervene between the formation of the intent to kill and the killing);"

*State v. Shirley,* 60 Wn.2d 277, 278, 373 P.2d 777 (1962), cited a number of the prior cases considering premeditation and said:

Nearly seventy years ago, in *State v. Rutten,* 13 Wash. 203, 212, 43 Pac. 30 (1895), this court held that it was reversible error to instruct in a trial on the charge of first degree murder that "There need not be any appreciable space of time between the formation of intention to kill and killing." Judge Dunbar stated the court's reasons as follows:

"It seems to us that the language used wipes out the

distinction made in the statute between murder in the first and second degree. While no great amount of time necessarily intervenes between the intention to kill and the act of killing, yet, under our statute there must be time enough to deliberate, and no deliberation can be instantaneous; in fact, the idea of deliberation is the distinguishing idea between murder in the first and second degree, and the instructions of the court which we have quoted give exactly that which would be necessary to define murder in the second degree, because the intention to kill must be in the mind of the slayer, and he must do it purposely and maliciously; consequently the act of killing must be preceded by the purpose to kill, and it must be a malicious purpose, and that purpose may be formed instantaneously, or as expressed by the learned court below, 'as instantaneous as the successive thoughts of the mind,' and under the old definition of murder, viz., the unlawful killing of any subject whatsoever through malice aforethought, that would be a proper instruction in regard to murder; but our statute has changed the law in this respect, and has introduced the element of deliberation, and deliberation means to weigh in the mind, to consider the reasons for and against, and consider maturely, to reflect upon,—and while it may be difficult to determine just how short a time it will require for the mind to deliberate, yet, if any effect is to be given to the statute which makes a difference between murder in the first and second degree, the language used by the learned court is too broad."

That decision has been reaffirmed (*State v. Straub,* 16 Wash. 111, 47 Pac. 227; *State v. Moody,* 18 Wash. 165, 51 Pac. 356; and *State v. Arata,* 56 Wash. 185, 105 Pac. 227; *State v. Ross,* 56 Wn. (2d) 344, 353 P. (2d) 885), but never overruled.

It is acceptable to inform a jury that no "fixed or definite" period of time need elapse so long as they are told that premeditation can occur in any length of elapsed time sufficient for forming an intent. This is different than informing the jury that no "appreciable space of time" need elapse for the formation of intent. The indication that no "fixed or definite" period need elapse deals with the measure of the length of time. The instruction said the time period need not be of a definite duration so long as a period of

time did exist. Indicating that a time period need not be appreciable could do away with the requirement of any instant for reflection; and thus be a wrongful instruction. "Appreciation" indicates the mental understanding necessary for premeditation and time for the thought process cannot be eliminated. The instruction when read in full did not do that and did not misinform the jury. The sentence containing the offending words "need not be . . . any fixed or definite length . . . of time" could have been omitted without impairing the purport of the instruction. The sentence was redundant in the context of the total instruction, but its inclusion therein was not erroneous. *Fisher v. United States,* 328 U.S. 463, 469, 90 L. Ed. 1382, 66 S. Ct. 1318, 166 A.L.R. 1176 (1946); *State v. Davis,* 6 Wn.2d 696, 706, 108 P.2d 641 (1940); *State v. Duncan,* 101 Wash. 542, 172 P. 915 (1918). *See State v. Lindgrind,* 33 Wash. 440, 74 P. 565 (1903); *State v. Gin Pon,* 16 Wash. 425, 47 P. 961 (1897).

We find no error in the refusal to reduce the charge from murder in the first degree to murder in the second degree and declining to instruct the jury along those lines. Prior conduct of a defendant is as much a part of the supportive evidence to show premeditation as is the immediate reflective deliberation which preceded the act itself. *State v. Ross,* 56 Wn.2d 344, 353 P.2d 885 (1960); *State v. Horner,* 21 Wn.2d 278, 150 P.2d 690 (1944). In *State v. Lanning,* 5 Wn. App. 426, 487 P.2d 785 (1971), the defendant contended that there was insufficient evidence to convict of first degree murder because there was no proof of premeditation. The court considered the extent of the knife wounds and said, "Some premeditation was necessarily involved in order to have available a knife-edged, lethal instrument . . ." *State v. Miller,* 164 Wash. 441, 2 P.2d 738 (1931); *State v. Williams,* 142 Wash. 673, 253 P. 1074 (1927); *State v. Bridgham,* 51 Wash. 18, 97 P. 1096 (1908); *State v. Holmes,* 12 Wash. 169, 40 P. 735, 41 P. 887 (1895).

There was substantial evidence to support each of the elements of murder in the first degree: (1) willful

assault with a knife by the defendants, (2) with a premeditated design to effect death, (3) resulting death, and (4) venue. A jury could find each element proven beyond a reasonable doubt. *State v. Conklin*, 79 Wn.2d 805, 489 P.2d 1130 (1971); *State v. Randecker*, 79 Wn.2d 512, 487 P.2d 1295 (1971); *State v. Dugger*, 75 Wn.2d 689, 453 P.2d 655 (1969); *State v. Finister*, 5 Wn. App. 44, 486 P.2d 114 (1971); *State v. Palmer*, 1 Wn. App. 152, 459 P.2d 812 (1969).

We find no error in the trial of this action. The judgment is affirmed.

HOROWITZ and WILLIAMS, JJ., concur.

Petition for rehearing denied May 10, 1973.

Review denied by Supreme Court July 23, 1973.