[No. 7464–8–II. Division Two. May 8, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES DEAN BINGHAM, *Appellant*.

*Timothy K. Ford* and *Kathryn Ross* (of *Jones, Ross, Luke, Casteel & Mallory*), for appellant.

*David H. Bruneau, Prosecuting Attorney,* for respondent.

WORSWICK, C.J.—We are asked to decide whether the time to effect death by manual strangulation is alone sufficient to support a finding of premeditation in the absence of any other evidence supporting such a finding. We hold it is not. Accordingly, we reverse the conviction of Charles Dean Bingham for aggravated first degree murder. We also overrule *State v. Smith,* 12 Wn. App. 720, 531 P.2d 843 (1975),[1] to the extent that it can be read to hold otherwise.

Leslie Cook, a retarded adult living at the Laurisden Home in Port Angeles, was raped and strangled on February 15, 1982. Bingham was the last person with whom she was seen. The two of them got off the Port Angeles–Sequim bus together at Sequim about 6 p.m. on February 15. They visited a grocery store and two residences. The last of these was Enid Pratt's where Bingham asked for a ride back to Port Angeles. When he was refused, he said they would hitchhike. They took the infrequently traveled Old Olympic Highway. Three days later, Cook's body was discovered in a field approximately ¼ mile from the Pratt residence.

At trial, the State's expert testified that, in order to cause death by strangulation, Cook's assailant would have had to maintain substantial and continuous pressure on her wind-

---

[1] *Aff'd,* 88 Wn.2d 127, 559 P.2d 970, *cert. denied,* 434 U.S. 876 (1977).

pipe for 3 to 5 minutes. The State contended that this alone was enough to raise an inference that the murder was premeditated. The trial judge agreed because of *State v. Smith, supra.*[2] Therefore, it allowed the issue of premeditation to go to the jury. The jury convicted Bingham of aggravated first degree murder, rape being the aggravating circumstance. On appeal, counsel for Bingham concedes that a finding of guilty of murder was justified; he challenges only the finding of premeditation, contending that the evidence was insufficient to support it. We agree.

Premeditation is a separate and distinct element of first degree murder. It involves the mental process of thinking over beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short, after which the intent to kill is formed. *State v. Brooks,* 97 Wn.2d 873, 651 P.2d 217 (1982). The time required for manual strangulation is sufficient to permit deliberation. *See* RCW 9A.32.020(1); *State v. Gaines,* 144 Wash. 446, 258 P. 508 (1927), *cert. denied,* 277 U.S. 81 (1928). However, time alone is not enough. The evidence must be sufficient to support the inference that the defendant not only had the time to deliberate, but that he actually did so. To require anything less would permit a jury to focus on the method of killing to the exclusion of the mental process involved in the separate element of premeditation.

The concept of premeditation had a slow but sure beginning in Anglo–American legal history. More than 500 years ago, English jurists arrived at the not surprising conclusion that the worst criminals—and those most deserving of the

---

[2]In *Smith,* there was some evidence of motive and of preparation. The opinion, however, does not focus sharply on this evidence but can be read to hold the time element alone sufficient to support premeditation. It can also be read to hold that more is required, inasmuch as it refers to events preceding the killing and makes passing reference to "the circumstances surrounding the child's death". 12 Wn. App. at 732. Our purpose in referring to *Smith* is to clear up this confusion.

It should also be noted that *Smith* was decided before our Supreme Court adopted the beyond a reasonable doubt standard enunciated in *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980), for testing the sufficiency of the evidence to support a jury finding.

ultimate punishment—were those who planned to kill and then did so. Thus began the movement toward classification of homicides that resulted in restriction of the death penalty to those involving "malice prepensed" or "malice aforethought."[3] When Washington's first criminal code was enacted in 1854, the Territorial Legislature abandoned this archaic language and used the phrase "deliberate and premeditated malice" in defining first degree murder. It thereby made a clear separation between a malicious intent and the process of deliberating before arriving at that intent.[4]

Our Supreme Court recognized the need for evidence of both time for and fact of deliberation in *State v. Arata,* 56 Wash. 185, 189, 105 P. 227 (1909). Although it reversed a first degree murder conviction because a portion of an instruction was erroneous, it approved the remainder of the instruction, saying:

> In the case at bar, the court said, in substance, the law knows no specific time; if the man reflects upon the act a moment antecedent to the act, it is sufficient; the time of deliberation and premeditation need not be long; if it furnishes room for reflection *and the facts show that such reflection existed,* then it is sufficient deliberation, and closed the instruction upon this point with the statement: "There need be no appreciable space of time between the formation of the intention to kill and the

---

[3]*See* Sayre, *Mens Rea,* 45 Harv. L. Rev. 974 (1932); Walther, *Should Virginia Put the Planning Back Into the Premeditation Requirement for Murder?,* 40 Wash. & Lee L. Rev. 340 (1983).

Confusion inevitably crept in as to whether the concept of "malice aforethought" involved premeditation. *See Regina v. Doherty,* 16 Cox Crim. Cas. 306 (1887). In a recent case, one of the English Justices pointed out that the term was ambiguous and should be discarded in favor of language more descriptive of the accused's state of mind. *See* opinion of Lord Hailsham of St. Marylebone, *Hyam v. Director of Pub. Prosecutions,* [1974] 2 All E.R. 41.

[4]*See* Laws of 1854, p. 78, § 12; *State v. Shirley,* 60 Wn.2d 277, 279, 373 P.2d 777 (1962).

killing." By these few last words the court destroyed at once all that was good in the entire statement, and gave the jury a rule which this court has frequently held was erroneous. This was reversible error.

(Italics ours.) *Arata,* 56 Wash. at 189. This analysis seems implicitly to have been recognized, although imperfectly expressed, in more recent cases as well.[5]

The subject of premeditation appears frequently in Washington cases. However, it is seldom discussed in a way that affords clear, objective guidance to trial judges in determining the sufficiency of the evidence to support it. Nevertheless, review of these cases reveals that in each one where the evidence has been found sufficient, there has been some evidence beyond time from which a jury could infer the fact of deliberation. This evidence has included, *inter alia,* motive, acquisition of a weapon, and planning directly related to the killing. *See State v. White,* 60 Wn.2d 551, 374 P.2d 942 (1962), *cert. denied,* 375 U.S. 883 (1963); *State v. Ross,* 56 Wn.2d 344, 353 P.2d 885 (1960); *State v. Lindamood,* 39 Wn. App. 517, 693 P.2d 753 (1985); *State v. Commodore,* 38 Wn. App. 244, 684 P.2d 1364 (1984).

Unless evidence of both time for and fact of deliberation is required, premeditation could be inferred in any case where the means of effecting death requires more than a moment in time. For all practical purposes, it would merge with intent; proof of intent would become proof of premeditation. However, the two elements are separate. Premeditation cannot be inferred from intent. *State v. Brooks,* 97

---

[5]*E.g., State v. White,* 60 Wn.2d 551, 374 P.2d 942 (1962) (court found evidence of premeditation from repeated assaults, then held time span adequate), *cert. denied,* 375 U.S. 883 (1963); *State v. Trickel,* 16 Wn. App. 18, 553 P.2d 139 (1976) (instructions held sufficient to inform jury that there must have been sufficient time and deliberation in fact); *State v. Tikka,* 8 Wn. App. 736, 509 P.2d 101 (1973) (the court separately considered the defendants' behavior and the time element and found both sufficient); *State v. Lanning,* 5 Wn. App. 426, 487 P.2d 785 (1971) (court held time sufficient, then found premeditation apparent from fact that defendant brought a weapon with him).

Wn.2d at 876; *State v. Commodore, supra.*[6]

Premeditation can be proved by direct evidence, or it can be proved by circumstantial evidence where the inferences drawn by the jury are reasonable and the evidence supporting the jury's findings is substantial. *State v. Luoma,* 88 Wn.2d 28, 558 P.2d 756 (1977). There was no such evidence here, either direct or circumstantial.

There was no evidence that Bingham had known Cook before February 15 or that he had a motive to kill her. By chance, they took the same bus. When Cook's companion on the bus refused to go to Sequim with her, Bingham offered to see that Cook got back to the Laurisden Home later. That was apparently still his intention when he asked for a ride at the Pratt residence. It could be inferred that between there and the field ¼ mile away, he decided to rape her. A reasonable jury could not infer from this beyond a reasonable doubt that he also planned to kill her. There is no other evidence to support a finding of premeditation. The fact of strangulation, without more, leads us to conclude that the jury only speculated as to the mental process involved in premeditation. This is not enough. The premeditation finding cannot stand.

There remains the difficult question of how to dispose of this case. Counsel for Bingham concedes that Bingham is at least guilty of second degree murder. *See* RCW 9A.32.050-(1)(a).[7] The jury was instructed on second degree murder as a lesser included offense and necessarily found the requisite elements in order to reach the verdict it did. *See Watson v. State,* 2 Wash. 504, 27 P. 226 (1891); *State v.*

---

[6]*See also State v. Shirley, supra; State v. Ross, supra; State v. Duncan,* 101 Wash. 542, 172 P. 915 (1918); *State v. Blaine,* 64 Wash. 122, 116 P. 660 (1911); *State v. Rutten,* 13 Wash. 203, 43 P. 30 (1895); *State v. Coella,* 3 Wash. 99, 28 P. 28 (1891); *State v. Tikka, supra.*

[7]RCW 9A.32.050(1)(a) provides:

"Murder in the second degree. (1) A person is guilty of murder in the second degree when:

"(a) With intent to cause the death of another person but without premeditation, he causes the death of such person or of a third person; . . ."

*Plakke*, 31 Wn. App. 262, 639 P.2d 796 (1982), *overruled on other grounds in State v. Davis*, 35 Wn. App. 506, 667 P.2d 1117 (1983).

We believe the evidence also would have supported a finding of felony murder under RCW 9A.32.030(1)(c). However, the State did not charge Bingham with felony murder. The trial judge correctly refused to instruct the jury that felony murder was a lesser included offense of the crime as charged. In order to satisfy the requirement for aggravation, the jury was required to find that the murder was committed either in the course of *or* in furtherance of the rape. RCW 10.95.020(9).[8] However, the felony murder statute requires that the offense be committed *both* in the course of *and* in the furtherance of the rape. RCW 9A.32-.030(1)(c).[9] We will refrain from offering here a discussion of the meanings of these terms. It will suffice to note the evident intent of the Legislature that the two terms mean different things. *See In re Marriage of Gimlett*, 95 Wn.2d 699, 629 P.2d 450 (1981). It is impossible to know whether the jury found the existence of both elements or only one. We cannot remand for sentencing for felony murder unless it is clear from the record that the jury expressly found each of the elements of that crime. *See State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980); *State v. Jones*, 22 Wn. App. 447, 591 P.2d 796 (1979); *State v. Martell*, 22 Wn. App. 415, 591 P.2d 789 (1979). In the circumstances, the

---

[8]RCW 10.95.020(9)(b) provides:

"(9) The murder was committed in the course of, in furtherance of, or in immediate flight from one of the following crimes: . . .

"(b) Rape in the first or second degree;"

[9]RCW 9A.32.030(1)(c) provides in relevant part:

"Murder in the first degree. (1) A person is guilty of murder in the first degree when: . . .

"(c) He commits or attempts to commit the crime of either (1) robbery, in the first or second degree, (2) rape in the first or second degree, (3) burglary in the first degree, (4) arson in the first degree, or (5) kidnapping, in the first or second degree, and; in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants; . . ."

State's election not to charge felony murder in the first instance precludes such a charge now. CrR 4.3; *State v. Anderson,* 96 Wn.2d 739, 638 P.2d 1205, *cert. denied,* 459 U.S. 842 (1982).

Reversed. Remanded for entry of judgment and sentence for second degree murder.

PETRICH, J., concurs.

ALEXANDER, J. (dissenting)—I would have this court adhere to its decision in the similar case of *State v. Smith,* 12 Wn. App. 720, 531 P.2d 843 (1975), *aff'd,* 88 Wn.2d 127, 559 P.2d 970, *cert. denied,* 434 U.S. 876 (1977). Consistent with that holding, I believe that where the evidence shows that death was caused slowly by manual strangulation in circumstances such as we have here, a rational trier of fact could be convinced beyond a reasonable doubt that the perpetrator intentionally caused death after deliberation and premeditation.

Contrary to the majority view, the law on this issue is unclear and unsettled. Washington case law and statutes do not provide a precise definition of premeditation, forcing us to examine the nature of the crime and the relationship between the concepts of intent and premeditation. "Premeditated" encompasses the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short. *State v. Brooks,* 97 Wn.2d 873, 651 P.2d 217 (1982). RCW 9A.32.020(1) provides:

> (1) As used in this chapter, the premeditation required in order to support a conviction of the crime of murder in the first degree must involve *more than a moment in point of time.*

(Italics mine.)

Premeditation may be proved by circumstantial evidence, where the inferences drawn by the jury from that evidence are reasonable. *State v. Luoma,* 88 Wn.2d 28, 558 P.2d 756 (1977). A jury may infer premeditation from the facts of

the crime when the defendant had an appreciable time in which to deliberate the intent to kill, though such time may be very short. *State v. Smith, supra.*

Time, then, may literally be of the essence. A number of cases have held that the element of premeditation is properly inferable from evidence of the lapse of time to death. *State v. Griffith,* 91 Wn.2d 572, 589 P.2d 799 (1979); *State v. Luoma, supra; State v. Harris,* 62 Wn.2d 858, 385 P.2d 18 (1963); *State v. Gaines,* 144 Wash. 446, 258 P. 508 (1927), *cert. denied,* 277 U.S. 81 (1928).

In *State v. Griffith, supra,* the evidence revealed that a group of children playing basketball bounced a ball against the outside wall of defendant's home. The defendant, apparently upset by this, engaged in some harsh words with the children and took their ball. Shortly afterward, two men, strangers to the defendant, went to defendant's home to ask that the ball be returned. During a discussion on the porch, the defendant produced a gun and shot one of the men. The court held that the evidence supported the verdict of premeditated murder. It stated:

> Although the period of time in which these events transpired was approximately 5 minutes, there was sufficient evidence from which the jury could have found that the defendant formulated an intent and deliberated upon it prior to the shooting. Premeditation is a question for the jury . . .

*Griffith,* 91 Wn.2d at 577.

In *State v. Luoma, supra,* there was no evidence of planning independent of the crime itself. However, the court held that the fact that the murderer had to transport the victim 5 miles, take her down a steep bank, place her there and crush her head with a large rock was sufficient evidence to permit the jury to find that an appreciable period of time elapsed for the defendant to have deliberated. The court stated:

> Although there was no direct proof of intent, premeditation may still be found where intent is logically inferred from the facts of the crime . . . [t]he jury could . . .

conclude that the death was not the result of an impulsive, spontaneous act.

*Luoma,* 88 Wn.2d at 33–34. This suggests, contrary to the majority's position at page 557, that premeditation can be inferred solely from the method of effecting death.

In *State v. Harris,* 62 Wn.2d at 868, our Supreme Court found the evidence of premeditation to be sufficient in a case where the victim was struck on the head several times with a blunt instrument, struck in the face, and then strangled with a vacuum cleaner cord. The strangling was the immediate cause of death. The court held that the jury could infer premeditation from the circumstances of the killing even though the killing was unwitnessed and defendant did not testify. The "appreciable period" was the time that "elapsed between the first blow of the beating and the choking [causing death] to permit the perpetrator to form an intent to kill . . ." An earlier case, *State v. Gaines,* 144 Wash. at 467, involved a death caused by a similar beating and choking. The court held that: "It is true that proof of the fact of killing, alone, does not raise a presumption of premeditation or deliberation, but premeditation or deliberation may be inferred from the circumstances of the killing."

The majority seems to suggest that for a jury to find premeditation or deliberation it must have preceded the formation of intent to kill. In other words, it seems to hold, if the intent to kill is formed impulsively there can be no premeditation. Neither logic nor case law leads me to concur with that conclusion. The fact of deliberation for the requisite time is the key ingredient of premeditation. If there is opportunity for deliberation before death is caused, the jury may find that the death is not the result of an impulsive act. *See State v. Griffith, supra.* It is not very productive, therefore, to engage in analysis or speculation over which occurred first, formation of intent to kill or reflection on that intent. Common sense suggests that premeditation exists as much if one is reflecting on an already formed intent to kill as it does when one is deliberating

whether or not to kill. In either case, reflection and deliberation are present, if the deliberation is for an appreciable time. If the killing follows this process of reflection, then it is a premeditated killing.

In this case, uncontroverted evidence was presented to the jury that it takes 3 to 5 minutes to effect death by manual strangulation. The jury was, therefore, justified in concluding that an appreciable period of time elapsed from the time the defendant first placed his hand or hands on the victim's throat, regardless of what his intent might then have been, until the act of strangulation caused her death. A jury would further be justified in concluding from the circumstances of this case, as it must have done, that the defendant would necessarily have his attention riveted during this period of time on what effect the application of pressure might have on the windpipe of this "child–like" woman. It is significant that the defendant was a large man and there was little sign of struggle at the scene of the killing. These facts indicate that the death was not the result of an impulsive or spontaneous act flowing from an attempt to overcome resistance or to effect sexual contact. In short, the evidence of time lapse and of the crime scene compels the conclusion that the defendant had ample opportunity to deliberate and premeditate on what he intended to achieve by choking his victim. The fact that he ultimately caused her death by strangulation justifies the conclusion that he intended to kill after reflecting on the deed for the requisite time.

I part with the majority's conclusion that premeditation is not inferable in a case such as this where the evidence so strongly establishes a period of time for deliberation. I would agree that although premeditation cannot automatically be inferred from the elapsed time, the jury should be permitted to examine the evidence to determine what it tells them about both intent and premeditation. The majority suggests that evidence of an appreciable time alone is not enough to establish deliberation. While I do not concede that the evidence tending to prove or show pre-

meditation here is limited to time, I believe this conclusion is contrary to case law discussed above. It is particularly contrary to *State v. Smith, supra,* the case that the majority would overrule. In *Smith,* a case which lacked "classic" evidence of premeditation, such as planning or lying in wait, the court held that the defendant's act of grabbing his son by the neck and holding him under water long enough to drown him provided sufficient evidence of intent to kill and premeditation. The majority attempts to distinguish the present case by stating that in *Smith* there was evidence of motive and preparation. There was none. The court stated:

> Although *no definite motive was proven,* the jury was presented with substantial evidence of the existence of premeditation. . . .

(Italics mine.) *Smith,* 12 Wn. App. at 732. The evidence of premeditation in *Smith* consisted primarily of the fact that the defendant had taken his son out at midnight and drowned him. Those facts alone caused the court to observe that an "appreciable period of time did elapse."

The only other evidence discussed by the court in *Smith* in reference to premeditation, other than the time involved in drowning, was the fact that the defendant had discussed separation from his wife prior to the murder. Though they had decided not to separate, it was agreed that if they did, she would have custody of their children, including the victim. Those facts provide less evidence of motive than the facts surrounding this case. It is difficult to believe that a person could be motivated to kill his child because he feared losing custody or wanted to hurt his wife. It is easier to believe that, as here, the defendant chose to kill in order to silence his victim and conceal a rape.

I am led to conclude that the time that elapses from the commencement of the act which causes death to the moment of death may be sufficient to allow a jury to find deliberation, notwithstanding the absence of evidence of planning before the commencement of the act causing death. I would submit that this has been the rule in this

state and is a rule in harmony with our statute. RCW 9A.32.020(1).

The majority seems concerned that permitting the jury to infer premeditation in a case such as this would allow the jury to focus on the method of the killing to the exclusion of evidence concerning the mental process involved in the element of premeditation. I disagree. I do not suggest that a jury should be allowed to exclude evidence of mental process. On the other hand, they should not be precluded from considering the method of killing if its very nature provides clues to the mental process of the perpetrator.

I can only assume the Legislature must have intended by distinguishing between first and second degree murder, establishing greater penalties for first degree murder, to discourage killing when one has an opportunity to think about it. The time period during which one continuously exerts sufficient pressure on a victim's throat to block breathing which, in turn, causes unconsciousness and then death, affords a person a significant opportunity for a change of heart. If a person consciously rejects the opportunity to lessen the pressure in that period, the person may be found to have deliberated. The more time required, the greater the probability that even a slow thinker had time to reflect.

The majority correctly observes that in this case there is no evidence of prior planning. The defendant did not testify at trial and thus the jury did not know his mental state except as he revealed it to investigating officers. What a person thinks or intends is always difficult to determine in any case because we cannot pry into the mind. However, what a person does is often the best gauge of his or her thinking. The fact finder is called upon to determine whether a defendant premeditated from the facts surrounding the killing. Here, the jury concluded, as well they might, that this defendant took this mentally retarded young woman to a secluded area of Clallam County, raped her, strangled her with little difficulty for 3 to 5 minutes until she was dead, and then proceeded to bite her dead

body. From this evidence a rational trier of fact could conclude beyond a reasonable doubt that the defendant was capable of reflecting and did reflect on his deed sufficiently to cause him to be guilty of premeditated murder in the first degree. The evidence supports the verdict and I would affirm.

Reconsideration denied June 10, 1985.

Review granted by Supreme Court September 6, 1985.