[No. 45208. En Banc. January 5, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE E. GRIFFITH, *Petitioner.*

*David C. Mitchell* and *Donald A. Senter* (of *Senter & Miller*), for petitioner.

*Robert E. Schillberg, Prosecuting Attorney,* and *George N. Bowden* and *Timothy P. Ryan, Deputies,* for respondent.

DOLLIVER, J.—This case arose out of a neighborhood dispute over a basketball game. On May 4, 1975, a group of children were playing with a basketball in an open area in an Everett housing project. The ball was bounced against the outside wall of the home where defendant lived with his mother. Defendant went outside, engaged in some harsh words with the youngsters and then grabbed the basketball. He took it inside and telephoned the police.

Shortly afterwards, two men, William Stillwell and Howard York, a neighbor, approached defendant's home and asked that the basketball be returned. Mr. Stillwell

was visiting with the parents of one of the children; Mr. York's daughter owned the basketball. None of the three men had met each other. During the discussion on the porch, the defendant produced a gun and shot Mr. York. Very shortly thereafter, members of the Everett police force arrived and were fired upon by defendant.

A jury convicted defendant of first–degree murder in the death of Mr. York, and second–degree assault in connection with the shot fired at the police car. The Court of Appeals affirmed in an unpublished opinion. We granted review and affirm defendant's conviction.

Several of defendant's assignments of error are directed to the trial court's instructions. The court told the jury in instruction No. 11 that excusable homicide was not a defense:

> A homicide may be excusable when committed by accident or misfortune in doing any lawful act by lawful means, with ordinary caution and without any unlawful intent.
>
> In this case I instruct you that, as a matter of law, you may not consider excusable homicide as a defense to the charge of murder.

In instruction No. 12, the jury was told that justifiable homicide was not a defense:

> Under certain circumstances and conditions a homicide may be justifiable, that is, one committed in self defense. None of such circumstances and conditions exist in this case, and I instruct you that, as a matter of law, you may not consider justifiable homicide as a defense to the charge of murder.

The court refused defendant's proposed instructions on the issue of self–defense.

A defendant is entitled to have his theory of the case submitted to the jury under appropriate instructions when the theory is supported by substantial evidence in the record. *Langan v. Valicopters, Inc.*, 88 Wn.2d 855, 567 P.2d 218 (1977); *Board of Regents v. Frederick & Nelson,* 90 Wn.2d 82, 579 P.2d 346 (1978). If any one of the theories

argued by defendant was supported by substantial evidence, it should have been submitted to the jury.

 The court's instruction No. 11 correctly stated the required elements of excusable homicide. If any one of those elements is missing, the defense of excusable homicide is not available. *State v. Hedges,* 8 Wn.2d 652, 113 P.2d 530 (1941). The record reflects that the defendant, even if he could be said to have been acting lawfully, failed to exercise ordinary caution in the discharge of a firearm. The trial court properly withdrew the issue of excusable homicide from jury consideration.

 Justifiable homicide is defined as homicide committed in the lawful defense of the slayer or a family member "when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury" to the person defended. RCW 9.48.170 (now RCW 9A.16.050). There must be imminent danger of such design being accomplished. Alternatively, homicide is justifiable when made in the actual resistance of an attempt to commit a felony upon the slayer or his dwelling. RCW 9.48.170. Defendant argues that the evidence shows that he was protecting his home and a member of his family from felonious entry by Mr. York.

When the evidence is viewed in the light most favorable to the defendant, it shows as follows: After the defendant had taken the basketball into his home and called the police, he went out to his car and obtained the gun, knowing that it was loaded. When Mr. Stillwell came to the door, the defendant engaged in discussion with him and then with Mr. York. During this discussion, the defendant was about 3 feet back from the doorsill, and his mother was standing to his right. Mr. York, according to the defendant's testimony, then stepped on the doorsill with one foot, and the defendant's mother moved forward. Mr. York placed one hand on the doorjamb and kept insisting that the basketball be returned to him. The basketball was on a chair approximately 5 feet behind the defendant. The defendant then brought his gun into sight, raised it and

pointed it at Mr. York. The defendant testified that Mr. York made a comment to the effect that the defendant was imitating a television character and that Mr. York appeared to be moving toward him when he fired.

It is uncontroverted that Mr. Stillwell and Mr. York were unarmed, had not engaged in any aggressive behavior, and that the first assault occurred when the defendant displayed his loaded gun and pointed it at Mr. York. Even if it is conceded that Mr. York moved forward toward the defendant, the use of deadly force was unjustified as a matter of law.

In *State v. Nyland,* 47 Wn.2d 240, 287 P.2d 345 (1955), we reviewed the justifiable homicide defense and found that such a defense is appropriate only if the felony which was sought to be prevented was of a violent nature. In *Nyland,* the trial court had refused the defendant's proposed self–defense instruction and had given an instruction wherein the jury was told that, as a matter of law, the defendant's acts were neither excusable nor justifiable. We pointed out that, under the statute a killing in self–defense is not justified unless the attack on the defendant's person threatens life or great bodily harm. Such an instruction, we held, was not a comment on the evidence nor otherwise improper.

Here, even if the defendant's version of the incident is true, a reasonable person could not find there was imminent danger of great bodily harm to the defendant or his mother. Nor was a felony about to be perpetrated upon the defendant's dwelling. At most, Mr. York's attempted entry to retrieve a basketball would amount to an unlawful trespass. Such conduct does not come within the felonious activity envisioned by RCW 9.48.170.

A self–defense instruction, or a justifiable homicide instruction, is appropriate only where the slayer has used such force as is reasonably necessary under the circumstances. In this case, the trial court was correct in finding that, as a matter of law, the use of deadly force under the circumstances described was excessive. We adhere to the

expression of this court in *State v. Churchill,* 52 Wash. 210, 224, 100 P. 309 (1909), in which we said:

> In order to sustain this assignment we would be required to hold that a simple assault or an ordinary battery would justify the taking of human life. We are not willing to stand sponsor for such a doctrine.

Defendant's next assignment of error is directed to the trial court's refusal to dismiss the charge of first–degree murder. The court found there was sufficient evidence from which a reasonable person could find premeditation occurred, and therefore submitted the issue to the jury.

■ Under Washington common law, which applies since this incident occurred prior to the effective date of the new criminal code, premeditation may involve as little as a moment in time. *State v. White,* 60 Wn.2d 551, 374 P.2d 942 (1962). The court's instruction stated that sufficient time must have elapsed to allow formation of intent and reflection upon the act intended, and that an appreciable length of time must have transpired. The instruction was also an accurate statement of the law contained in the provisions of the new criminal code (*see* RCW 9A.32.020), and was more advantageous to defendant than would have been an instruction embodying the common–law rule. Although the period of time in which these events transpired was approximately 5 minutes, there was sufficient evidence from which the jury could have found that the defendant formulated an intent and deliberated upon it prior to the shooting. Premeditation is a question for the jury (*State v. Davis,* 6 Wn.2d 696, 108 P.2d 641 (1940)), and the jury's finding of premeditation in this case is supported by the evidence.

Defendant also assigns error regarding the appointment of a defense expert psychiatrist under RCW 10.77.

At the time of his arraignment, defendant, who was indigent, entered a supplemental plea of not guilty by reason of insanity. He requested the court to appoint a psychiatrist as an expert to assist him in preparing a defense. The trial court declined to do so at that time and instead appointed

an examination panel under the terms of RCW 10.77.060. The court indicated to defendant that he could renew his request for an expert after the court considered the reports of the examining panel. Later, defendant moved to withdraw the insanity portion of his plea, apparently in the hope that this would render unnecessary his examination by the court–appointed psychiatrists. The court deferred consideration of the request until after the reports of the examining psychiatrists were received.

Defendant now argues that the court erred in refusing to appoint his psychiatric expert at the time of the arraignment and in refusing to allow withdrawal of the insanity plea at the time the request was made.

■ RCW 10.77.020(2), which applies whenever a defendant pleads not guilty by reason of insanity or where there is reason to doubt the defendant's competency to stand trial, provides:

> Whenever any person is subjected to an examination pursuant to any provision of this chapter, he may retain an expert or professional person to perform an examination in his behalf. In the case of a person who is indigent, the court shall upon his request assist the person in obtaining an expert or professional person to perform an examination or participate in the hearing on his behalf. An expert or professional person obtained by an indigent person pursuant to the provisions of this chapter shall be compensated for his services out of funds of the department, in an amount determined by it to be fair and reasonable.

RCW 10.77.060 requires that the court appoint at least two qualified experts to examine and report to the court upon the mental condition of a defendant who has raised the insanity defense or when there is reason to doubt his competency. Subsection (2) authorizes the defendant's own expert to witness the examination by the court–appointed psychiatrists, to have access to all information obtained by them, and to file his own report. Read together, RCW 10.77.020(2) and RCW 10.77.060 contemplate the appoint-

ment of a defense expert prior to appointment of an examination panel. The trial court erred in not appointing a defense expert at the time of arraignment. However, such error did not prejudice the defendant's rights in any manner. Defendant's counsel, apparently for tactical reasons, never renewed his request for an expert even though specifically encouraged by the court to do so. Moreover, the defendant withdrew his insanity plea and went to trial on a plea of not guilty.

The defendant claims that he was prejudiced in not being able to prepare for his examination by court–appointed psychiatrists, indicating that the psychiatrists would have reached a different conclusion as to the defendant's competence and mental state if the defendant had consulted with a psychiatrist before being examined by the panel. This misapprehends RCW 10.77.020(2) and RCW 10.77.060. The purpose of these provisions is to provide expert psychiatric assistance for defendants in the preparation of their defenses; the purpose is not to provide assistance in preparing for examination of a defendant by court–appointed psychiatrists. While defendant was entitled to appointment of his own expert under the statute, we fail to see—nor has it been demonstrated by defendant—how the trial court's misinterpretation of that statute (in delaying the appointment) prejudiced him in the preparation of his defense. We also find that the defendant's rights were not prejudiced by the refusal of the trial court to allow withdrawal of the insanity plea until after the psychiatric reports from the court–appointed panel had been received and reviewed. He was allowed to withdraw the defense of insanity and proceed to trial on a simple not guilty plea with additional evidence of mental irresponsibility offered to negate the element of intent.

Defendant's remaining assignments of error are without merit. The continuances granted by the trial court were based upon proper grounds (CrR 3.3(e)(2); now CrR 3.3(f)(2)), and the rules provide for the amendment of

information before a verdict is reached if substantial rights of the defendant are not prejudiced. CrR 2.1(d). Defendant does not claim surprise nor inability to prepare a defense because of the trial court's rulings on these issues.

Affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.