# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 67964-3-I |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN ACCIE BRIGGS IV, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 11, 2013 |
| | ) | |

DWYER, J. — John Briggs appeals from his conviction of assault in the second degree arising from an incident in which, during the course of an argument, Briggs attacked and wounded his roommate with a machete. Briggs asserts that the trial court erred by declining to instruct the jury regarding the law of self-defense. However, because the degree of force employed by Briggs was not reasonably necessary under the circumstances, a claim of self-defense could not be successfully interjected, and the trial court did not err by denying Briggs's request for such an instruction. Accordingly, we affirm.

I

On the night of June 11, 2011, a 911 call was placed from the home of

John Briggs. The caller, who did not identify himself or speak to the operator, left the line open. The operator was able to discern the sounds of male voices arguing. Edmonds police officers were thereafter dispatched to Briggs's residence.

Upon arriving at the scene, the officers encountered Jameson Nelson outside the house. Nelson, who had run from inside the residence, was bleeding from wounds on his left arm and back. He appeared to be frightened and was yelling for help. Nelson told the officers that Briggs, with whom Nelson shared the house, had attacked him with a machete. The officers observe a two-inch cut on Nelson's arm and a "good wide gash" on his back.

Briggs emerged from the house several minutes later. He admitted to the officers that he was intoxicated. Briggs was bleeding from a cut above his left eye and told the officers that he had been punched by Nelson during an argument over "normal roommate issues." He told the officers that he had then returned to his room, obtained a machete, and used this weapon to chase Nelson from the house. The officers recovered two machetes from the residence. Briggs identified one of the machetes as the weapon used during the incident.

Briggs was thereafter taken into custody and charged with assault in the first degree while armed with a deadly weapon other than a firearm.

At the ensuing trial, Nelson testified regarding his encounter with Briggs. He told the jury that he and Briggs had been arguing in the living room. He explained that Briggs believed that someone had stolen items from his room and

that Nelson was responsible. Nelson testified that Briggs was intoxicated and that Nelson had used his hands to direct Briggs out of the living room and into his bedroom. Nelson denied hitting, kicking, or shoving Briggs as he directed Briggs to his room.

Nelson told the jury that after Briggs entered his bedroom, Nelson went to the kitchen to eat. Several minutes later, however, Briggs reappeared, blocking the only exit from the kitchen. He was armed with a machete. Nelson testified that Briggs said, "what, what?" and then approached Nelson with the weapon raised. As Nelson lifted his hand to defend himself, Briggs swung the machete and struck him on the left arm. Nelson then struck back at Briggs, hitting him in the face with his fist. He attempted to run past Briggs and, as he did so, he felt pain on his back. Nelson then fled from the house and encountered a police officer almost immediately.

The jury also heard testimony from Michael Cassel, the person who had placed the 911 call. Cassel, who also shared the house with Briggs and Nelson, testified that he was in his bedroom when he heard the two men arguing. He told the jury that, upon emerging from his room, he saw Briggs and Nelson in the living room, just inches from one another, screaming and yelling. He testified that they may have been pushing each other. Cassel did not see either one hit the other and did not see any blood or weapons. He then dialed 911 and set the phone down on the living room table.

Cassel told the jury that, after Briggs returned to his bedroom and Nelson went to the kitchen, Cassel returned to his own bedroom. Shortly thereafter,

however, he heard what sounded like a person hitting the door with his fist or feet. Moments later, Cassel heard screaming, a door slam, and footsteps going out the door. When Cassel left his bedroom to investigate, he saw Briggs standing alone in the living room holding a machete. Briggs told Cassel that he needed to leave the house.

A recording of the 911 call placed by Cassel was also played for the jury. During the first several minutes of the call, Cassel and Nelson can be heard attempting to deescalate the situation. Nelson tells Briggs to "knock it off, calm down." Cassel tells Briggs to "put down the phone, take care of yourself, go back to the bathroom." Someone tells Briggs that he is bleeding and that he should "mop it up." Cassel tells Briggs to put something on his eye. Later in the recording, Briggs tells someone that, "you better get the fuck out of here." Finally, just prior to the end of the call, Briggs can be heard saying, "What? I'm serious."

Briggs did not testify at the trial.

After the defense rested, the prosecutor argued to the trial court, outside the presence of the jury, that the evidence adduced was insufficient to support a self-defense instruction.[1] The trial court—after considering additional briefing by the defense—agreed and, accordingly, declined to instruct the jury regarding the law of self-defense.

The jury thereafter convicted Briggs of assault in the second degree while

---

[1] Prior to the trial, the State had conceded that a self-defense instruction would be appropriate.

armed with a deadly weapon—a lesser included offense on the count of assault in the first degree. Briggs was sentenced to a term of imprisonment within the standard range.

Briggs appeals.

II

Briggs contends that the trial court erred by declining to instruct the jury regarding the law of self-defense. We disagree.

A criminal defendant is entitled to have the trial court instruct upon his or her theory of the case so long as there is evidence to support the theory. State v. Hughes, 106 Wn.2d 176, 191, 721 P.2d 902 (1986). The defendant is not entitled to a self-defense instruction unless there is "'some evidence which tends to prove that the [defensive act] occurred in circumstances amounting to self-defense.'" State v. Walker, 136 Wn.2d 767, 772, 966 P.2d 883 (1998) (quoting State v. Janes, 121 Wn.2d 220, 237, 850 P.2d 495 (1993)). The court must view the evidence in the light most favorable to the defendant. State v. Callahan, 87 Wn. App. 925, 933, 943 P.2d 676 (1997). However, "[i]f any one of the elements of self-defense is not supported by the evidence, the self-defense theory is not available to a defendant, and the defendant cannot present the theory to a jury." Walker, 136 Wn.2d at 773 (citing State v. Griffith, 91 Wn.2d 572, 575, 589 P.2d 799 (1979)).

A valid claim of self-defense requires (1) that the defendant subjectively feared that he or she was in imminent danger of bodily harm, (2) that this belief was objectively reasonable, and (3) that the defendant exercised no more force

- 5 -

than was reasonably necessary. State v. Werner, 170 Wn.2d 333, 337, 241 P.3d 410 (2010). The defendant may employ no greater force than "what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant." State v. Walden, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997). Deadly force—defined as "the intentional application of force through . . . means reasonably likely to cause death or serious physical injury," RCW 9A.16.010(2)—is justified only when the threat perceived is of death or great bodily harm. Walden, 131 Wn.2d at 474. Where the evidence demonstrates that the defendant's use of force under the circumstances is excessive as a matter of law, the trial court does not err by declining to instruct the jury on self-defense. Griffith, 91 Wn.2d at 575; State v. Brigham, 52 Wn. App. 208, 210, 758 P.2d 559 (1988).

Here, no reasonably prudent person in Briggs's circumstances would find the use of deadly force in the form of a machete to be necessary to meet the alleged threat posed by Nelson.[2] Considering the evidence in the light most favorable to Briggs, Nelson struck Briggs while the two men were arguing in the living room, and the cut above Briggs's eye was caused by Nelson striking him. It is undisputed that Briggs then returned to his bedroom, armed himself with the machete, and, several minutes later, confronted Nelson in the kitchen. There is also no dispute that Briggs twice struck Nelson with the machete as Nelson

---

[2] The trial court's decision not to give a self-defense instruction was based upon the court's conclusion that there was no evidence tending to indicate that Briggs had a subjective fear of bodily harm at the time he assaulted Nelson. However, we may affirm on any grounds supported by the record. State v. Costich, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

attempted to escape from the kitchen, opening substantial cuts on Nelson's left arm and back.

Given these circumstances, the threat posed by Nelson did not justify the use of deadly force. As we explained in Brigham, a case in which the defendant also had been previously struck by the victim,

> [the defendant's] displaying a knife may well have been a reasonable response to Bluford's attack. Had the episode ended there, a jury could have found Brigham justified in resisting Bluford in this way and thus no crime. But when Brigham moved to stab Bluford, the character of their encounter changed from an altercation between the two men to an assault by Brigham upon Bluford. Brigham thrust his knife into Bluford's back eight times; this was excessive force as a matter of law under the circumstances, and could not be successfully interjected as self-defense to Bluford's attack.

52 Wn. App. at 210.

Here, as in Brigham, when Briggs moved to cut Nelson with the machete, the character of their encounter changed from a common altercation to an assault by Briggs upon Nelson. Briggs swung his machete at Nelson twice, cutting Nelson as he attempted to flee the scene. There was no evidence adduced from which the jury could determine that Briggs perceived a threat of death or great bodily harm from Nelson, and accordingly, as in Brigham, Briggs's use of potentially lethal force was excessive as a matter of law.

Even when the evidence is viewed in the light most favorable to Briggs, no reasonably prudent person could have determined that Briggs's use of force was

No. 67964-3-I/8

necessary under the circumstances. Accordingly, as in Brigham, the omission of

a self-defense instruction was not error. 52 Wn. App. at 210.

Affirmed.

We concur: