IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 77553-7-I |
| BRIAN JORDAN MINNIEAR, | UNPUBLISHED OPINION |
| Petitioner. | FILED: |

ANDRUS, J. — Brian Minniear filed a personal restraint petition challenging his jury conviction for second degree assault while armed with a deadly weapon. Because we conclude that Minniear's attorney provided ineffective assistance by failing to propose a revived self-defense instruction, we grant Minniear's petition and remand for a new trial.

## FACTS

In 2013, Jeffrey Casselman and Daniel Otto were hired to remodel a rental property in Snohomish, Washington. Behind the property were several vacant lots that were only accessible via the property's driveway. The property owner told Casselman "nobody was supposed to be up there." However, at some point, Casselman noticed "a motorhome and debris up there."

On September 17, 2013, Casselman parked his truck in the property's driveway and began unloading construction materials. Casselman saw a man,

later identified as Minniear, coming down the driveway from behind the property. Casselman walked up the driveway and saw a silver Volkswagen hatchback behind the property. Casselman asked what Minniear was doing on the property and Minniear said that he "was helping somebody take a generator out of the motorhome."

As to what happened next, Minniear's and Casselman's testimony differs. According to Casselman, Minniear told him "to move [his] god-damn truck." Casselman told Minniear that the property owner was going to call 911 and began walking back down the driveway. Minniear yelled "Better move that god-damn fucking truck right now or I'm going to shoot you." Casselman turned around and saw that Minniear had a gun in his hand, pointed down at the ground. Casselman went "right up...in his face" and stated "That's the dumbest thing you could have ever done."

Casselman further testified that Minniear got into the Volkswagen and attempted to use it to push Casselman's truck out of the way. When he was unsuccessful, Minniear got into Casselman's truck to move it. Minniear managed to shift the truck into neutral and it began to roll forward. Concerned that Minniear was trying to steal the truck, Casselman and Otto ran over and attempted to pull Minniear out of the truck. Minniear pulled out the gun again, pointed it at Casselman and said "I'm going to fucking shoot you." Minniear pulled the trigger and Casselman "heard this little click" but the gun did not go off. Minniear swung the gun at Casselman, gouging Casselman's arm.

2

Minniear put the gun in his pocket and ran back to the Volkswagen, with Casselman and Otto in pursuit. As Minniear attempted to shut the driver's side door, Casselman and Otto grabbed the window, "pulling on it to keep him from going anywhere." Minniear pulled out the gun again. He pulled back the slide and Casselman saw a bullet eject from the top of the gun. Minniear pointed the gun at Casselman, stated that he was going to shoot Casselman, and pulled the trigger, but again the gun did not fire. Minniear managed to drive around Casselman's truck and drove away.

According to Minniear, he politely asked Casselman to move his truck but Casselman told Minniear he couldn't leave and then laughed at him. Minniear denied trying to push Casselman's truck with the Volkswagen but admitted entering Casselman's truck to roll it forward so that he could drive around it. According to Minniear, the gun was in the glovebox of the Volkswagen during this time. Minniear testified that after he moved the truck, he walked back towards the Volkswagen. Casselman and Otto chased after him, attempted to drag him out of the car, and then began beating him on the back with what he believed was a baseball bat. Minniear claimed that he only displayed the gun at this point to scare them off so he could leave.

Police officers responding to the property owner's 911 call pulled Minniear over and arrested him. After Minniear stepped out of the car, an officer noticed a .380 caliber bullet on the ground outside of the driver's side door. The bullet was clean and undamaged and appeared to have recently fallen on the ground. Officers found a .380 caliber pistol in the glove box. Minniear's car also contained

3

three tennis balls with dog bones printed on them. Minniear testified that he did not own a dog and that the balls were not in the Volkswagen prior to the incident. The jury was read a stipulation that the property owner "owned a dog that played with tennis balls sometimes kept in a plastic tube container."

The State charged Minniear with two counts of second degree assault, both with Casselman as the victim. At trial, the State argued that the basis for count I was Minniear pointing the gun and pulling the trigger while inside Casselman's truck. The State argued that the basis for count II was Minniear pointing the gun and pulling the trigger while inside the Volkswagen.

Minniear's defense at trial was self-defense. The trial court gave the jury Minniear's proposed pattern self-defense instruction:

> It is a defense to a charge of Assault in the Second Degree that the force used, attempted to be used, or offered to be used was lawful as defined in this instruction.
>
> The use, attempt to use, or offer to use force upon or toward the person of another is lawful when used, attempted, or offered by a person who reasonably believes that he is about to be injured, and when the force is not more than is necessary.
> …
>
> The person using or offering to use the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.
>
> The State has the burden of proving beyond a reasonable doubt that the force used, attempted, or offered to be used by the defendant was not lawful. If you find that the State has not proved the absence

of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.[1]

The State requested, and the trial court gave, the pattern "first aggressor" instruction:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use, offer, or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.[2]

Defense counsel did not object to the instruction.

In closing argument, the State argued that once Minniear got into Casselman's truck, he could not legally claim self-defense for anything that happened afterwards.

> I have to prove that it's not self-defense. However, we don't get there at all because of Instruction No. 12. Instruction 12 is what is commonly referred to as the first aggressor instruction. What does that mean? It means that it applies for exactly this type of situation.
>
> You don't get to create the need for somebody for yourself to act in self-defense and then claim it. A burglar can't break into your home and then you try and beat them up or assault them because they are breaking in your home, and then they defend themselves and it's self-defense. I had to; they were beating me up. You created it.
>
> He broke in the victim's truck. Right then it is no different whether or not the victim should have moved his truck. That has no relevance in that situation. At no point was the defendant given permission or allowed under the law to get in the victim's truck. Right then, any claim of self-defense is nullable. If you believe that he got in the victim's truck, which he admitted to, and you believe that he then therefore created the need, created a belligerent response on the

---

[1] See 11 Washington Practice: Washington Pattern Jury Instructions: Criminal (WPIC) 17.02, at 196 (2d ed. 1994).

[2] See 11 Washington Practice: Washington Pattern Jury Instructions: Criminal (WPIC) 16.04, at 182 (2d ed. 1994).

part of Casselman, which he did have, there is no reason to deliberate on the self-defense because he created it. You can't create the situation.

...

The defendant was the first aggressor when he got into that truck, which means he cannot avail himself of the self-defense instruction.

(Emphasis added).

A few hours after they began deliberating, the jury submitted a question regarding the application of the first aggressor instruction to each of the two charged counts:

Per instruction No. 12 [the first aggressor instruction], can an intentional act, i.e., the first aggressor action apply to both charges, or, are we required to identify separate first aggressive acts for each charge?

The trial court responded to the jury's question as follows:

The jury is permitted, but not required, to find that an intentional act or set of acts of the defendant occurring at a single point in time is/are sufficient to apply instruction No. 12 to either or to both counts of assault in the second degree. The jury is instructed to re-read Instruction No. 3.[3]

Instruction No. 3 directed the jury to consider each count separately.

Approximately twenty minutes later, the jury asked another question:

If we determine that instruction no. 12 applies, does the term "self-defense" in no. 12 refer to instruction no. 11 [the general self-defense instruction] which simply uses the term "defense"? I.e., if no. 12 applies then no. 11 cannot apply?

The trial court answered:

The term defense, as used in Instruction No. 11, refers to self-defense, as used in Instruction No. 12. During your deliberations, you must consider the instructions as a whole.[4]

---

[3] Defense counsel successfully argued for the insertion of the phrase "but not required" and the reference to Instruction No. 3.

[4] Defense counsel did not object to this instruction.

6

The jury failed to reach a unanimous verdict on count I but convicted Minniear on count II. The jury also returned a special verdict that Minniear was armed with a firearm. This court affirmed Minniear's convictions on direct appeal.

## DISCUSSION

To successfully challenge a judgment and sentence by means of a personal restraint petition, a petitioner must establish either (1) actual and substantial prejudice arising from constitutional error, or (2) nonconstitutional error that inherently results in a "complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). If a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he or she has necessarily met the burden to show actual and substantial prejudice. In re Pers. Restraint of Crace, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

Under the sixth amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, a defendant is guaranteed the right to effective assistance of counsel in criminal proceedings. Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffective assistance of counsel, a petitioner must demonstrate both (1) that his attorney's representation was deficient, i.e., that it fell below an objective standard of reasonableness, and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The

reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004). There is a strong presumption that a defendant received effective representation. McFarland, 127 Wn.2d at 336.

Minniear contends that once the trial court gave the State's first aggressor instruction, defense counsel was ineffective for failing to propose a revived self-defense instruction. We agree.

A first aggressor loses the right to act in self-defense. State v. Dennison, 115 Wn.2d 609, 617, 801 P.2d 193 (1990). However, if an aggressor in good faith withdraws "from the combat at such a time and in such a manner as to have clearly apprised his adversary that he in good faith was desisting, or intended to desist, from further aggressive action," the right to act in self-defense is revived. Dennison, 115 Wn.2d at 617 (quoting State v. Craig, 82 Wn.2d 777, 783, 514 P.2d 151 (1973)) (internal quotations omitted). A defendant is entitled to a jury instruction supporting his or her theory of the case only where the theory is supported by substantial evidence in the record. State v. Griffith, 91 Wn.2d 572, 574, 589 P.2d 799, 802 (1979).

Here, such an instruction would have been supported by the evidence. Throughout the entire confrontation it was apparent that Minniear's intention was to leave the property. After Minniear moved Casselman's truck enough to be able to use the driveway, Minniear's actions – including putting the gun back in his

pocket and attempting to start his own car and drive away – clearly communicated to Casselman his intention to withdraw from further conflict.

To determine if defense counsel was ineffective for failing to propose the instruction, we first examine whether the failure constituted deficient representation. We conclude that it does. Our conclusion is supported by the declaration of Minniear's trial attorney, who admits that there was no tactical reason not to request such an instruction.

> Prior to the State's closing argument, I did not really anticipate the importance the first aggressor instruction would take on in this case. I was not particularly familiar with the law disfavoring such an instruction or with the law concerning the revival of the right to self-defense in the case of a first aggressor who withdraws from the conflict. I did not agree with the State's argument that once Mr. Minniear got into Jeffrey Casselman's truck without permission he could not have acted in self-defense and there was no need to deliberate on self-defense but I did not object or request any curative instruction based on this argument. But going into closing arguments, I did not know the State would push this line of reasoning so I had not really researched any bases for such an objection or curative instruction(s) and I was not aware of the same. I did not make any strategic or tactical decision not to object or request a curative instruction based on these arguments even though it was apparent these arguments were harmful to the defense.
>
> ...
>
> Based on the jury's question, I was concerned that the jury might misapply the first aggressor instruction, especially to count II, and I tried to articulate this concern to the Court. Although I did my best, I did not have time to thoroughly research the issue and I did not cite any caselaw or propose any particular language to inform the jury the first aggressor instruction should not apply, even in the case of a first aggressor, if the defendant withdrew from the combat at such a time and in such a manner as to have clearly apprised his adversary that he in good faith was desisting or intended to desist. I did not make any strategic or tactical decision not to do so and I can see that such an instruction would clearly have been of benefit to the defense.

In support of his claim, Minniear also attaches a declaration from an experienced criminal defense attorney and former prosecutor who opined that defense counsel's performance was deficient.

> As soon as [defense counsel] knew the trial court intended to give the first aggressor instruction, he should have requested an instruction regarding withdrawal and revival of self-defense. Washington case law recognizes the right of self-defense may be revived even in the case of a first aggressor if the aggressor in good faith withdraws from the combat at such a time and place that clearly apprises his adversary that he in good faith was desisting or intended to desist. This law is hardly obscure or esoteric. Rather, it is plainly referenced in the readily available commentary to WPIC 16.04.[5] Had [defense counsel] requested this instruction, he would have been able to argue to the jury that no matter their conclusions about the events leading up to Count II, even Mr. Casselman agreed that before this assault allegedly took place Mr. Minniear was not brandishing any weapon and was trying hard to withdraw from the confrontation altogether by leaving the scene.
>
> Absent this instruction, the state was allowed to argue incorrectly stating the law and relieving them of their burden of proving each element of the offense beyond a reasonable doubt by arguing the jury did not even need to consider the issue of self-defense at any point after Mr. Minniear entered Mr. Casselman's truck without permission (no matter the subsequent circumstances). Especially under these facts and after the state proposed and the trial court gave the first aggressor instruction as well as after the state made this argument, I do believe [defense counsel] fell well below prevailing professional norms in failing to propose an instruction explaining withdrawal can revive self-defense even in the case of a first aggressor.

---

[5] The comment to WPIC 16.04 provides, in relevant part, as follows:
The court in State v. Dennison, 115 Wn.2d 609, 617, 801 P.2d 193, 198 (1990), noted that the right of self-defense may be revived if the aggressor in good faith withdraws from the combat "at such a time and in such a manner as to have clearly apprised his adversary that he in good faith was desisting, or intended to desist." Accord, State v. Wilson, 26 Wn.2d 468, 174 P.2d 553 (1946); Annot., Withdrawal, After Provocation of Conflict, as Reviving Right of Self-defense, 55 A.L.R.3d 1000. See also the section on withdrawal in the Comment to WPIC 16.02 (Justifiable Homicide—Defense of Self and Others).

The State argues that because Minniear's theory of the case was that Casselman was the initial aggressor, a revived self-defense instruction would have been inconsistent with this theory because it would have constituted an admission that Minniear was the one who committed an aggressive act.[6] But a defendant is entitled to present inconsistent defenses. State v. Fernandez–Medina, 141 Wn.2d 448, 6 P.3d 1150 (2000). While the decision not to present potentially inconsistent defenses is a tactical one, defense counsel admitted that the decision was not made for strategic reasons but rather due to an unfamiliarity with the law.

Minniear also meets his burden to establish that his defense was prejudiced by the failure to request the instruction. In closing argument, the State argued that Minniear could not claim self-defense as to either of the assaults once he committed an aggressive act – in this case, trying to move Casselman's truck. This was an incomplete statement of the law because Minniear was entitled to claim self-defense if he later withdrew in good faith from the conflict. The jury's questions suggest confusion as to whether they could find Minniear had acted in self-defense once he had committed an aggressive act, regardless of any subsequent withdrawal. A revived self-defense instruction would have accurately communicated the law and given rise to a reasonable probability that the jury would have acquitted Minniear of count II.

---

[6] In closing argument, defense counsel stated:
> You know, the primary aggressor, what started this? What started this was Jeff Casselman blocking that driveway, then refusing to move it, whether it's civil or criminal.
>
> ...
>
> I contend to you that Mr. Casselman was the initial aggressor.

11

Because we conclude that defense counsel was ineffective for failing to propose a revived self-defense instruction, we grant Minniear's personal restraint petition. We vacate his judgment and sentence and remand for a new trial.[7]

WE CONCUR:

_Andrus, J._

_Appelwick, C.J._

---

[7] Because we grant Minniear's petition on these grounds, we decline to address Minniear's other ineffective assistance of counsel claims.